JOHN LEMBKE, Appellant, v. JOHN M. FRITZ, doing business as FRITZ OIL COMPANY, Defendant, Appellee, ERVIN REISNER, Defendant.

No. 43834.

MARCH 16, 1937.

Hall, Lupton & Maurer, for appellant.

W. H. Antes, for appellee.

Stiger, J.—On September 7, 1935, the plaintiff John Lembke, brought an action against John M. Fritz, doing business as the Fritz Oil Company, and Ervin Reisner for personal injuries received February 13, 1934, in a collision between plaintiff's automobile and a truck owned and driven by defendant Reisner. The petition alleges that the defendant Reisner was, at the time of the accident, an employee, servant and agent of the defendant John M. Fritz and the plaintiff seeks to hold the defendant Fritz liable for the negligence of his servant Reisner. At the close of the evidence the defendant John M. Fritz moved for a directed verdict on two grounds, (1) that the undisputed evidence shows that the collision was between plaintiff's automobile and a truck owned by defendant Reisner; (2) that the defendant Reisner, as shown by the undisputed evidence, was at the time of the accident, an independent contractor and therefore any negligence on the part of Reisner could not be imputed to or charged against the defendant Fritz.

The trial court sustained the motion on the first ground. The jury returned a verdict for the plaintiff against Reisner and a directed verdict for the defendant John M. Fritz. The plaintiff appealed from the ruling of the court sustaining the motion for a directed verdict and from the verdict.

The sole issue presented on this appeal is, whether Reisner was a servant of John M. Fritz or an independent contractor at the time of the accident.

There was no written contract of employment between John M. Fritz and Reisner. The only witness in the case was the defendant Ervin Reisner produced as plaintiff's witness and, as the question before us must be determined solely from Reisner's testimony, we will set out his material evidence given on direct and cross-examination in narrative form as follows:

"I started working for John M. Fritz August 25th, 1933. He told me if I wanted to get a job I had to get a truck, so I bought the truck when I started working for him and have never owned any other truck. Under my employment I worked six days a week, from 7:00 o'clock in the morning until 6:00 o'clock at night. I had to go to the warehouse of the Fritz Oil Company

to report for work each day. That is where my truck was located. When I was through my work at night I brought the truck back to the warehouse and left it there over night. The oil tank and containers and all the equipment were furnished and owned by Fritz and placed on the chassis of the truck when I started to work. The name 'Fritz Oil Company' was painted in big, black letters on the tank when I started work. The company furnished the gasoline and oil I used in operating the truck and examined the brakes and the rest of the truck regularly every week to see that it was in good condition all free of charge to me. I was paid for my work on a commission basis each week end. When I started work, Mr. Fritz told me to drive the truck slowly and not to exceed 25 or 30 miles an hour, and also told me *how to do my work*. Under the arrangement, Mr. Fritz could fire me any time he wanted to. I imagine I was free to quit any time I wanted to without incurring any liability. If I wanted a day off, I obtained permission from Mr. Fritz. I had a carbon copy order book for orders. It contained a printed form for the Fritz Oil Company. When I made out an order I would date it and put on the slip the name of the customer, the number of gallons and the price and then sign it Fritz Oil Company by Ervin Reisner. If they paid me I gave them a receipt signed the same way. If the purchase was charged, I would sign one of the printed slips to show that they received the gasoline and would give the original to the customer and take the duplicate back to the Fritz Oil Company which would make the charge on the books. I turned all of the money paid to me into the office of the Fritz Oil Company.

"All the gasoline, oil and grease that I carried on the truck belonged to John M. Fritz. I didn't have an oil business of my own. The only business I had all the time I worked for Fritz was for him alone. I did not have the right to hire an assistant, and under the arrangement, there was no agreement to work for any particular time. The only use I made of the truck was in working for John Fritz. As part of my employment I was required to be at work every day at 7 o'clock in the morning. If there were no orders for oil and gasoline deliveries waiting for me at the office when I went down in the morning, or after I had delivered the orders, I went out canvassing. After canvassing awhile I would drop back to the office again as the orders for gas and oil were sent into the office of the company. I was required

to keep busy up to 6:00 o'clock in the evening. I did not have an oil distributor's license, the Fritz Oil Company had the transport license on the truck.''

Cross-examination.

''Q. You have been asked if it was necessary for you to ask Mr. Fritz if you wanted to get time off. Now, do you mean to say that it was only done as a matter of good business or was that part of your original contract at the time you were hired that you had to do it? A. It was my duty.

''Q. What would he tell you about wanting to keep on the job? A. He told me if I wanted to take a day off to ask him. This truck was licensed in my name. I never owned the tank. It belonged to the Fritz Oil Company, but I had it on to do hauling with the truck. I did not have any set route to follow every day unless I had orders to fill. I would go over to the office in the morning and see if there were any orders to fill, would go out and fill them and after that I would go canvassing. Mr. Fritz did not, at any time during my employment and up to the time of the accident, direct me to take a particular road to get to the customers. Mr. Fritz did not outline for me in the morning what I should do during the day unless there were orders to fill. If there were six orders on the spindle, Fritz told me to fill the orders in the order called. I was free to contact and canvass any customer and deliver oil and gasoline to any customer. There was no one else working for the company with a truck delivering oil. When I would go out to canvass, on no occasion would I have to ask Mr. Fritz whom I should canvass. I was free to come and go as I pleased in the matter of canvassing customers. I did not have to ask John M. Fritz which road I should take to get to a customer.''

Reisner worked under this arrangement for Fritz from the date of his employment to and after the accident and for no other employer.

The testimony of Ervin Reisner stands uncontradicted. This court in many cases has exhaustively considered the difference between a servant and an independent contractor. We stated in Mallinger v. Webster City Oil Company, 211 Iowa 847, loc. cit. 851, 234 N. W. 254, 256:

''An independent contractor, under the quite universal rule,

may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results.''

In In re Estate of Amond, 203 Iowa 306, 308, 210 N. W. 923, 924, we stated:

''Looking to our own cases, we find that the test quite uniformly applied in this state is: Does the employee represent the master as to the result of the work only, or as to the means by which the result is obtained? If as to the result, and in the employment of the means he acts *entirely independently of the master*, he must be regarded as an independent contractor. * * * In all of the cases decided by this court, particular emphasis has been given *to the right* of the employer to dictate and control the manner, means, and details of performing the services. * * * Unless the employer *has the right* to direct the means and manner of doing the work, and *has the right of control* over the employee, the doctrine of *respondeat superior* is not applicable. * * * An essential element of this doctrine is the right of control by the master or employer over the servant or employee.''

In Norton v. Day Coal Company, 192 Iowa 160, loc. cit. 165, 180 N. W. 905, 908, we stated:

''The relationship of master and servant does not exist, unless there be the right to exercise control over methods and details,—to direct how the result is to be obtained. The power to direct must go beyond telling what is to be done,—to telling 'how it is to be done'.'' The court further states: ''It is elementary doctrine * * * that one is not an employee if he may choose his own method of working.''

In Pace v. Appanoose County, 184 Iowa 498, loc. cit. 514, 168 N. W. 916, 921, the court quotes with approval from the case of See v. Leidecker, 152 Ky. 724, 154 S. W. 10:

''One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the work, is an independent contractor, and not a servant.''

The case of Root v. Shadbolt & Middleton, 195 Iowa 1225,

193 N. W. 634, adopts the same definition of independent contractor quoted in the above Pace case.

In the case of Ash v. Century Lumber Co., 153 Iowa 523, 133 N. W. 888, 891, 38 L. R. A. (N. S.) 973, the court, in quoting from Wood on Master and Servant, states:

"The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control and was liable to be discharged by him for disobedience of orders or misconduct."

In harmony with the above tests the court in the case of Ash v. Century Lumber Co., supra, states, loc. cit. 530:

"* * * one who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of such servant committed in the course of his employment. The reasons for this are, in substance, that the master is answerable for the wrongs of his servant, * * * because he is conducting his master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured."

All the cases agree that the test of the relationship of master and servant is not the actual exercise of power of control over the details and methods to be followed in the performance of the work but the test is the *right to exercise such control*.

In the case of Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254, 259, the facts are strikingly similar to the facts in this case. After stating the facts the court states, loc. cit. page 857:

"In brief, Mallinger was not engaged in the oil and gasoline business on his own account. His business was not separate and independent of the employing oil company, but part of *its* business. He had no sales organization, which would indicate that he was engaged in an independent business as a seller and deliverer of the products of the oil company. He employed no assistants. Mallinger's contract had no date of expiration. It was a continuing employment, dependent upon whether either of the parties wished to cancel, on ten days' notice."

The court also states:

"* * * if Mallinger had been an independent contractor in

this business, he would have been compelled, under the state law, to secure a license to sell and deliver gasoline. It is conclusively shown that Mallinger procured no license, but the company did.''

In the Mallinger case, the court held that the relation of master and servant and not of independent contractorship existed. See Franks v. Carpenter, 192 Iowa 1398, 186 N. W. 647.

Among the cases relied on by appellee are Arthur v. Marble Rock School District, 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718; In re Estate of Amond, 203 Iowa 306, 210 N. W. 923; and Norton v. Day Coal Company, 192 Iowa 160, 180 N. W. 905.

In the case of Arthur v. Marble Rock School District, cited by appellee, Mr. Arthur was driver of a school bus for the defendant school district. With the exception of the body, he furnished his own vehicle, tires, oil and gasoline and the method and quality of repairs to the chassis were under his supervision and direction alone. The school board was interested in but one thing and that was transportation. Mr. Arthur devoted a small amount of time to transporting the children, the balance of the time being devoted to other occupations. He had the right to substitute another suitable driver satisfactory to the board. The court held that it was plain that the school district was not conveying children through Mr. Arthur as its driver and that it was equally plain that Arthur himself did the transporting and therefore he was an independent contractor and not an employee. In In re Estate of Amond, the deceased was employed to haul coal from cars to employer's bins for storage and to deliver coal from the bins to customers. The employment was not steady and was limited to such time as Amond had coal to haul. The deceased selected his own route, his hours of work, and his own method and means of doing it. He was a free lance, hauling for anybody he could get work with. The court held that he was an independent contractor. The facts in these cases are not comparable with the facts in this case.

In the instant case Fritz told Reisner that if he wanted to get a job he would have to get a truck and stipulated how he should drive the truck. Fritz inspected the truck for mechanical defects each week. He furnished the gasoline and oil used by Reisner free of charge. The evidence is undisputed that when Reisner started to work, his employer told him ''how to do the work''. Obviously Reisner was under Fritz's orders as to the

various details of the work he was to do and how the work was to be done. Reisner did not have an oil distributor's license, but Fritz did have such a license for the truck. Reisner had no oil business of his own but gave his entire time to the business of the Fritz Oil Company working from 7:00 o'clock in the morning until 6:00 o'clock at night. His time was not his own but belonged to the oil company and he occupied his time in carrying on and performing the business of the Fritz Oil Company, that is, he was representing Fritz in all that he did and was not carrying on his own business because he had no business of his own. During the entire working day, Reisner was about his master's business. The oil company furnished the entire equipment used on the truck in order that Reisner might carry on its business. All of the products sold were the company's products. Every morning Reisner would report at the garage for instructions. If there were no orders he would canvass awhile and return to the office to find out if there were not more orders for him to fill. The fact that the oil company did not control the details of his canvassing and permitted him to use his own judgment does not make him an independent contractor. A competent servant does not need constant supervision over work that he is familiar with and able to perform. There was no occasion for minute control over Reisner when he went out to solicit customers. But, under the arrangement, without question, the oil company *had the right* to control, direct and supervise any and all work done by Reisner at any time.

In the Mallinger case, supra, we stated:

"Mallinger was allowed latitude in his physical movements and in the exercise of his judgment in covering the territory assigned him under the contract. This perforce was necessary, and contemplated by the contract. It is necessarily implied that, had Mallinger not given sufficient attention to his work to accomplish the purpose of his employment by the company, he would have lost his employment. Mallinger was not engaged in a distinct occupation or business. He was not independently in the oil business. He was a part of the sales organization of the oil company, and was employed by said company to prosecute the business of the company, * * *. Mallinger was employed for the reason that the company decided that he had the ability to make sales, deliver the goods, and collect the pay therefor."

What is said of Mallinger's employment may be appropriately said of Reisner's employment.

Fritz manifestly had the right to direct Reisner in everything that he did and if he refrained from so doing it is not of controlling importance.

It appears from the record that Reisner was subject to Fritz's orders as to how the work was to be done and was liable to be discharged for disobedience to such orders and, as held in Ash v. Century Lumber Company, supra, "this is a real test of master and servant relationship". Applying the above tests to the facts here, Reisner did not carry on an independent business, contracting to accomplish a result according to his own methods and in his own way and on his own time subject to only control by his employer as to results, but was working under a general contract of service, and was employed to carry on the master's business who controlled the means and had the right to tell him how the work was to be done, and represented the master and his master's business at all times. It is therefore clear that Reisner was an employee and not an independent contractor and that the court erred in directing a verdict for the defendant John M. Fritz.—Reversed.

RICHARDS, C. J., and ANDERSON, HAMILTON, and PARSONS, JJ., concur.