MERIDIAN TAXICAB CO., INC., v. WARD.

(Division A. Feb. 20, 1939.)

[186 So. 636. No. 33559.]

Howard Westbrook, of Meridian, for appellant.

502

M. V. B. Miller, of Meridian, for appellee.

**McGowen, J.,** delivered the opinion of the Court.

Appellee, Mrs. Nellie Ward, brought an action for damages for personal injuries against the Meridian Taxicab Company, Charles E. O'Steen and James L. Ward, alleging that due to the concurrent negligence of O'Steen and Ward, the driver of the taxicab in which Mrs. Ward was riding as a passenger, a collision occurred on the public streets of Meridian between the car driven by O'Steen and the car driven by James L. Ward, her husband, in which she was seriously injured. At the conclusion of the

evidence of the appellee, she dismissed her suit against her husband. The case was submitted to the jury on conflicting evidence as to the negligence or not of O'Steen and Ward. The jury's verdict was for $4,000 against the Meridian Taxicab Company, Inc., and O'Steen was acquitted of negligence by separate verdict.

The contention sharply presented here is that the court erred in not granting a peremptory instruction for the appellant for the reasons that the appellant was not engaged in the business of transporting passengers and that Ward was not a servant, employe or agent of the appellant. It is conceded that the verdict of the jury eliminated the question of negligence.

It is undisputed in this record that the appellant is a corporation chartered under the Laws of Mississippi; that in Meridian it maintains an office at a filling station where it employs several telephone operators; and that it maintains call telephones in various parts of the city where drivers of taxicabs engaged in transporting passengers may call in and notify the main office. This office is under the supervision and direction of Mitchell, the general manager of the corporation. Twenty-eight drivers were operating taxicabs owned by third persons. Saxon owned the car driven by Ward. These taxicabs are maintained, furnished with gasoline and oil at the office filling station, and the drivers of the taxicabs are furnished a parking place for their cabs. The taxicab company is furnished free office space on condition that the oil and gasoline for the operation of the taxicabs be purchased at a discount at that filling station. The owner of the car paid therefor.

The taxicab company has painted on the outside of the taxicabs the figures 4000, which is the trade name by which passengers call for transportation service in and around the City of Meridian. Each taxicab is given also a number, presumably for the identification of the driver. The taxicab driven by Ward on the occasion here involved was number 14. When a person desires transpor-

tation service they call this station and the operator of the telephone gives the order for service, with the address and name of the passenger, to the taxicab driver who drives his taxicab to the point designated by the passenger, collects the fare and transports the passenger to the desired destination. The fare in the case at bar was 10c and was paid by Mrs. Ward to Ward, and while en route to her destination this injury occurred. The driver received as compensation for his services twenty-five per cent of the amount collected by him while in the service, and he settled with Saxon daily, retaining his commission and paying the balance to Saxon. Saxon would then pay a fixed charge of $1.25 for each day his taxicab was in service to the taxicab company.

Under the system, the telephone operator of the taxicab company gives the orders for passenger service to taxicab drivers in regular order, but a particular driver can be preferred if a passenger requests a special driver by name and the driver can decline to take a specific order for service.

It is undisputed that the taxicab company has a rule that it will not call for service a driver who is drinking or under the influence of liquor; and that the manager of the taxicab company requires the drivers of the cabs to drive carefully and be courteous to the passengers. On occasions, the manager has required the taxicab drivers to inform passengers and others that the taxicab company insures passengers, and it has so advertised to the public. The amount to be charged in the various zones for the service is fixed by the manager of the taxicab company. The owner of the car has to pay to the taxicab company $1.25 for each day if the driver of his cab responds to a single call. In other words, it is a flat charge against the owner regardless of the number of calls answered and served by a particular taxicab in a given day. No charge is due the taxicab company if a taxicab is not called to respond one time.

The disputed facts are these: That Ward testified that

the taxicab company had posted in its office a set of rules for the government of the cab drivers, which they were required to read, and the taxicab company would discharge a driver if in its judgment the rules were violated; that the taxicab drivers had to obey the orders as the servants of the company or else the driver and the cab would be excluded from service; that a driver would be fired if he did as he pleased and not conform to the rules; and that he took orders from the operators who were under the immediate management of Mitchell, the general manager. He further testified that he was under the supervision, direction and control of the Meridian Taxicab Company; and that Saxon could take his car off when he pleased.

Mitchell testified that the rules had been framed by the taxicab drivers themselves prior to the organization of his corporation; that the rules had not been enforced since the organization of the corporation; that the taxicab drivers, so far as the corporation was concerned, could charge a particular passenger or not as he saw fit; that his duties were to see that the operators at the office gave orders of passengers to the taxi drivers and to settle with the owners of the taxicabs. He denied that he had the power to discharge any driver, but said that he would not permit a driver to be called while he was drinking. Saxon, the owner of the car driven by Ward, was shown to have been engaged in a radio shop, and that when Mitchell found irregularities in the car he advised the owner thereof.

(1) The contention is that appellant was only engaged in the business of furnishing telephone service to the drivers of taxicabs owned by third persons; that when a passenger's order for taxicab service was communicated by the telephone operator of the company to one of the taxicab drivers then and there its business ceased. To state the proposition is to answer it. By practice as to the operation of this business, the facts show that the appellant was actively conducting the taxicab business

for transporting passengers for hire, the telephone service and transportation service are so intimately, closely knit together as to be useless each without the other. The acts of the taxicab company in dealing with would-be passengers in conjunction with its orders emanating from its place of business to the taxicab drivers with explicit directions as to when, where and for whom to render service puts this question beyond logical debate. Moreover, it placed its trade name "4000" on each taxicab in its service, and advertised to the public that its passengers were insured; and also fixed the zones and charges to be paid by passengers and to be collected by the drivers.

(2) Having arrived at the inescapable conclusion that the appellant here was engaged in what is commonly known as the taxicab business, that is, transporting passengers for hire, the next question is—whose servant was Ward, the driver of the car on this occasion. It is contended by the appellant that Ward was the servant of Saxon, the owner of the car, and that it exercised no control of the driver of the taxicab for the reason that it paid him nothing for his services, but on the contrary received a flat charge of $1.25 per day; also, that they could not hire drivers for the owners nor discharge them; and that none of the tests set forth in Kisner v. Jackson, 159 Miss. 424, 132 So. 90, are here present. The case most strongly relied on for its contention is Crescent Baking Company v. Denton, 147 Miss. 639, 112 So. 21, wherein this Court held that a truck driver engaged in delivering bread along a route designated by the baking company from which he purchased the bread, and over whom the baking company had no control (except as to the route) in the operation of the business and in selling and delivering bread to patrons, and was not an employe of the baking company so as to create liability against it for injuries sustained while the truck driver was so engaged; holding in that case that the truck driver was not subject to the control of the baking company in carrying

on that business at the time. The facts of that case, however, are not similar to the facts in the case at bar. The truck driver in the Cresent Baking Company case was simply a vendor of bread on his own account, and the fact that he was to sell in a prescribed territory on a prescribed route did not create the relation of master and servant or of principal and agent. He brought his bread and paid for it. When he sold it, he took the profits or losses as the case might be.

In the case of Texas Company v. Mills, 171 Miss. 231, 156 So. 866, 869, this Court said: "'(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.' Rest. Agency, section 2, pars. 2 and 3, p. 11." These statements are but a reiteration of what has been announced in varying language on the question of whether or not the relation of master and servant exists or that of independent contractor, and on the facts, this case falls within or without the above definitions. The cases most nearly in point for the position of the appellant here are Cook et al v. Wright, 177 Miss. 644, 171 So. 686, and Crosby Lbr. & Mfg. Company v. Durham, 181 Miss. 559, 179 So. 285, 854, in which cases upon their facts it was held that as between the servant and the alleged master that there intervened an independent contract.

We may now say with perfect safety that unquestionably the relation of master and servant, under this evidence, existed between Saxon, the owner of the taxicab, and Ward, the driver thereof, on the occasion of which complaint is here made. Whatever contract there was between the parties here was in parol. This is not a case where there was a written contract to the effect that the

servants of the owners of the car were not to be the servants of the taxicab company. However, it is settled in this State that one may be the servant of two masters. In the case at bar, a taxicab company made an executory contract with Mrs. Ward to deliver her as a passenger in a taxicab to a fixed destination. It directed Saxon's servant to discharge whatever obligation it had assumed, and while in the discharge of that obligation injury ensued to the passenger. The fact is that without the taxicab and the driver, the taxicab company had no business. Its entire business and its receipts depended upon service to the patronizing public. It advertised that a passenger who embarked in a taxicab was protected by insurance, it specifically directed the taxicab driver to go to the designated point and discharge its already assumed obligation to transport a passenger. It controlled the driver in that it gave him orders where to go. True, the taxicab company did not direct him as to how many feet to drive or what particular route to take in order to effect that transportation. It required its drivers to abstain from drinking intoxicants. It required them to be courteous. It required them to be careful. And the jury had the right to find that a man could be discharged who did not live up to these details in the personal conduct of the drivers. Of course, the taxicab company was interested in the result, but without the obedience of its orders in detail, there could be no result. By the system in which the taxicab company directed the acts of the drivers, they effectually control the actions of the driver by ordering him where and when to go. As was said by this Court in the case of Southern Express Co. v. Brown, 67 Miss. 260, 7 So. 318, 319, 8 So. 425, 19 Am. St. Rep. 306: "He was engaged in and about the business of the company; was, as Albright says, subject to be discharged by it. In a somewhat similar case to this, the supreme court of Massachusetts said: 'The fact that there is an intermediate party in whose general employment the person whose acts are in question is engaged, does

not prevent the principal from being held liable for the negligent conduct of his subagent or under-servant, unless the relation of such intermediate party to the subject-matter of the business in which the under-servant is engaged be such as to give him exclusive control of the manner and means of its accomplishment, and exclusive direction of the persons employed therefor.' "

"A person may be the servant of two masters, not joint employers, at one time as to one act, provided that the service to one does not involve abandonment of the service to the other." Rest. of the Law—Agency—Section 226, page 498. It is evident that the service rendered by the driver herein was the same for both masters in which they both had financial interest, but in this case the direct control and management of the physical action of the driver of the taxicab was exercised by the taxicab company. Also, see Texas Company v. Mills, supra.

We conclude therefore that the Meridian Taxicab Company was engaged in the business of transporting passengers for hire, and that it controlled the servant of Saxon in the manner and details for the performance of its contracts, and that in such matters of detail of the performance of the service the driver of the taxicab here was under the exclusive control in that particular of the taxicab company.

We cannot disturb the verdict on the ground that it was excessive for we can not with confidence say that the jury has evinced passion and prejudice herein.

The instructions were probably erroneous in this case but not to the extent that we can say with any degree of confidence that omissions in the instructions were fatal to the verdict.

Affirmed.