[No. 28235. Department Two. June 6, 1941.]

*In the Matter of the Appeals of* FARWEST TAXI SERVICE, INC.[1]

[1]Reported in 114 P. (2d) 164.

*Karr & Gregory* (*Carl G. Koch,* of counsel), for appellant.

*The Attorney General* and *Lyle L. Iversen, Assistant* (*Lawrence W. Thayer,* of counsel), for respondent.

BEALS, J.—The commissioner of unemployment compensation and placement of the state of Washington, after hearings before that bureau, determined that certain persons who had filed claims for unemployment compensation were employees of Farwest Taxi Service, Inc., and as such employees were entitled to unemployment compensation, within the provisions of chapter 162, Laws of 1937, p. 574 (known as the unemployment compensation act), as amended. The claimants were drivers of taxicabs, employed to operate taxicabs bearing the insignia of Farwest Taxi Service, Inc., at a *per diem* compensation. The claimants contended that they earned sufficient wages as employees of the Farwest Taxi Service, Inc. (hereinafter referred to as Farwest), in an employment covered by the act, to entitle them to the benefits of the statute. Farwest contended that the claimants were not in its employ, and had not reported claimants' earnings to the commissioner of unemployment compensation.

The unemployment compensation division ruled that the claimants were entitled to compensation, from which rulings Farwest appealed to the appeal tribunal, where the appeal examiner, after a full hearing was had on the consolidated appeals, ruled that the unemployment compensation division had correctly determined the question. The commissioner of unemployment compensation and placement affirmed the appeal examiner, and from this ruling Farwest appealed to the superior court, which affirmed the ruling of the department. From the adverse judgment entered by

the superior court, Farwest Taxi Service, Inc., has appealed.

October 27, 1937, the unemployment compensation commissioner (hereinafter referred to as the commissioner) notified Farwest that, after a study of its operations, it had been determined that the corporation was without the operation of the statute. Later, this ruling was reversed, the commissioner deciding that the corporation was within the scope of the statute. The latter ruling, as affirmed by the superior court, is that sought to be here reviewed.

Error is assigned upon the refusal of the superior court to review the findings of fact made by the appeal examiner, and upon the court's refusal to review the decision of the examiner ruling that an employer-employee relationship existed between Farwest and the persons claiming compensation. Appellant also contends that the superior court erred in refusing to allow the introduction before it of additional testimony, and in limiting the scope of inquiry to the record as before the appeal tribunal. Error is also assigned upon the entry of judgment sustaining the departmental ruling to the effect that the claimants were in the employ of Farwest, within the meaning of the unemployment compensation act above referred to.

In the present case, the appeal examiner made the following findings of fact:

"The Farwest Taxi Service, Incorporated, was organized under the general incorporation laws of the State of Washington. Its Articles, copy of which has been furnished by the appellant and is deemed a part hereof, provide for the operation of a general taxicab business within the state.

"A number of independent taxicab owners desired to provide themselves with a switchboard to service calls by patrons. Thereupon the Farwest Taxi Service was organized, commenced operations, and is now operating in the following manner:

"The corporation maintains a switchboard in their offices at 1514 Terry Avenue, Seattle, Washington. Through it are routed calls to taxi stands in various parts of the city. For this service the owners contribute a 'nut' of $1.50 per day for each cab in operation. These 'nuts' comprise the entire income of the firm, out of which is paid all operating expenses and dividends, if any, to the stockholders.

"Each driver turns over his daily receipts to the corporation, which in turn, deposits $5.00 of that amount with its bank, and gives the remainder to the owner on his next call. The firm draws a check on its bank once a week for the entire driver payroll, and the men receive their wages at the appellant's offices every Wednesday. Their remuneration is $5.00 per day, the sum deposited, regardless of what their respective receipts were during the preceding week. The men look to the corporation for their wages but the corporation would look to the individual owner for reimbursement in the event a driver's receipts did not equal the wages paid him for that week.

"All cabs operated by the owners under contract with the appellant were painted the same colors and bore the same name and telephone number. All advertising was done, and the telephone listed, under the name of Farwest. The individual owners paid for gasoline, oil, repairs, insurance, licenses, storage, and all other items incidental to the actual operation of the cabs. Patrons' charge accounts are carried by the corporation and losses resulting therefrom are borne by the corporation.

"Each stockholder owns one or more cars, but all owners are not stockholders.

"On August 15, 1939, the appellant entered into a contract with the Taxicab Drivers and Chauffeurs Local Union No. 465. That contract was signed by the president and secretary of and in behalf of the appellant, and by the secretary of and in behalf of the union, and superseded a similar agreement signed by the appellant's manager and the Local's secretary. The present contract specifies the wages, hours and working conditions applicable to all drivers, and was consummated without the assent of the individual owners.

"Drivers are placed by the appellant's manager, by an individual owner, or by the union on the request of either manager or owner. All men, however, must obtain a permit from the Local before reporting for work. The men thus employed are not restricted to driving the cab of one particular owner, but may and do work on other cars operating under the Farwest colors.

"Drivers are disciplined by the appellant, because '. . . these fellows have to be sort of held in line; you have to look after them in one respect of the word, so they don't get in wrong with the union.' In one case a driver was given a three day layoff by appellant's manager for some wrongdoing, in spite of the protest of the owner of the cab on which the man was working.

"Discharges and layoffs are under the control of the manager and are sometimes based on the recommendation of the owner. On one occasion, however, when an owner was asked to intercede for a discharged driver, he replied that 'he couldn't do anything about it whatsoever.'

"Counsel have stipulated that the evidence introduced shall apply to operations by all owners and drivers within the organization."

In the recent case of *In re St. Paul & Tacoma Lumber Co.,* 7 Wn. (2d) 580, 110 P. (2d) 877, referring to the unemployment compensation act, it was held that

". . . the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious."

The appeal examiner's finding that the labor contract under which Farwest's drivers operate "was consummated without the assent of the individual owners," *supra,* is not supported by any evidence in the record. The record would not support a finding that there was such assent, but it fails to support the finding that there was not.

In so far as the findings purport to show the reasons for the disciplining of drivers of Farwest, they are not supported by the record. The record, however, does support the finding that the drivers were disciplined by Farwest as occasion arose.

With the exception of these minor matters, we accept as the facts in the case the findings of fact made by the appeal examiner, as hereinabove set forth.

The trial court properly refused to review the findings of fact made by the appeal examiner. *In re St. Paul & Tacoma Lumber Co., supra.*

Appellant's first assignment of error is without merit.

■ Appellant next contends that the trial court refused to review the decision of the appeal examiner, by which that official held that an employer-employee relationship existed between appellant and the claimants. In the court's memorandum opinion, which is a part of the statement of facts, the court expressed the view that the appeal examiner had correctly construed the law "in concluding that the Farwest Taxi Service, Inc., is the employer of the claimants herein, within § 19." The judgment entered simply affirms the decision of the commissioner, but upon the record it cannot be held, as contended by appellant, that the trial court failed to review the commissioner's decision.

■ In the course of the hearing before the superior court, appellant offered to introduce further evidence concerning the relationship existing between appellant and the claimants, contending that the evidence which it sought to introduce would show that the relationship between the parties was not that of employer and employee. The trial court refused to admit the evidence offered, and error is assigned upon such refusal. This assignment of error is without merit. The statute with which we are here concerned

provides that on appeal to the superior court the matter shall be heard upon the record as made before the department. *In re St. Paul & Tacoma Lumber Co., supra.* This provision of the statute would be meaningless if on appeal the superior court should hear additional evidence bearing upon the issue which had been determined within the department.

Appellant argues that the evidence which it sought to introduce before the superior court concerned the jurisdiction of the administrative agency, and that the statute should not be so construed as to permit the department to determine facts establishing its own jurisdiction to hear and determine the controversy.

The act does not provide that the existence of an employer-employee relationship is a jurisdictional fact which must exist in order to enable the department to proceed with a hearing and a determination of the questions presented. By the act, the department is empowered to hear evidence concerning the controversy, and decide whether or not the employer-employee relationship exists, and a decision by the department to the effect that no such relationship was shown to exist is within the statutory jurisdiction and authority of the department. A decision by the commissioner, holding that an employer is subject to the act, must be based upon findings of fact which show that the relationship of employer and employee, within the scope of the act, exists, but the jurisdiction of the administrative agency to proceed with a hearing on claims of alleged employees and to render a decision on those claims, is a different matter. The trial court did not err in refusing to receive the evidence offered on behalf of appellant.

Finally, appellant contends that the trial court erred in sustaining the commissioner's decision. Appellant

argues that the taxi drivers, who are the claimants in this proceeding, were in the employ of the individual cab owners, and were not employed by appellant, and that consequently appellant, not bearing the relationship of employer to the drivers, is not liable for contributions to the unemployment compensation fund, as held by the commissioner and the superior court.

Chapter 162, Laws of 1937, p. 574, entitled the "Unemployment Compensation Act," as amended by chapter 214, Laws of 1939, p. 818 (Rem. Rev. Stat. (Sup.), § 9998-101 [P. C. § 6233-151] *et seq.*), constitutes the law of this state covering the subject matter of the title as above quoted. Section 7 (a) of the act, p. 587, provides for the payment of contributions by each person classified by the act as an employer. Section 7 (b), p. 587, fixes the rate of such contributions. The term employer is defined in § 19 (f) (1), p. 609 (Rem. Rev. Stat., § 9998-119 (f) (1) [P. C. § 6233-317 (f) (1)]) as follows:

"Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week)."

Section 19 (g) (5), p. 611, provides that:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the director that:

"(i) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places

of business of the enterprises for which such service is performed; and

"(iii)  Such individual is customarily engaged in an independently established trade, occupation, profession or business, of the same nature as that involved in the contract of service."  Rem. Rev. Stat. (Sup.), § 9998-119 (g) (5) [P. C. § 6233-317 (g) (5)].

Whatever relationships are excluded from the scope of the term "employment," as defined by the act, it seems clear that the act covers such contractual relationships as would be held to constitute employer and employee, or master and servant, at common law. *McDermott v. State,* 196 Wash. 261, 82 P. (2d) 568; *Washington Recorder Pub. Co. v. Ernst,* 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667.  If the relationship between appellant and the taxi drivers (claimants herein) falls within the common law definition of employer and employee, then appellant is an employer under the act, and claimants, as its taxi drivers, are entitled to unemployment benefits.

One employee may have two or more employers or masters.  Restatement of the Law of Agency, § 226.  The supreme court of Mississippi, in the case of *Meridian Taxicab Co. v. Ward,* 184 Miss. 499, 186 So. 636, 120 A. L. R. 1346, in considering the responsibility of a corporation, which occupied toward its drivers a relationship very similar to that of appellant to the claimants herein, to a third party for damages occasioned by the negligence of a taxi driver, said:

"We may now say with perfect safety that unquestionably the relation of master and servant, under this evidence, existed between Saxon, the owner of the taxicab, and Ward, the driver thereof, on the occasion of which complaint is here made.  .  .  .  However, it is settled in this State that one may be the servant of two masters."

It was held that the corporation was responsible for the negligence of its taxi driver.

From the record in the case at bar, it appears that neither appellant nor the owners of the taxicabs operating under appellant's symbol enjoyed exclusively the rights to hire, discharge, and discipline the taxi drivers, to establish their wage scales, or to control their work. Apparently these powers were exercised jointly by appellant and the owners of the cars. The record supports the appeal examiner's findings that the drivers were sometimes hired by appellant's manager, and sometimes by the individual cab owners, and that sometimes drivers were placed by the union, upon request either of appellant or an owner. Taxi drivers were discharged or laid off, sometimes by appellant, and on other occasions by the individual owners. The same is apparently true as to the discipline imposed upon taxi drivers in case of derelictions of duty. It would seem that appellant could, on occasion, take disciplinary measures, even against the wishes of the owner of the cab which was being driven by the driver whom appellant desired to discipline. The drivers' wages, hours of labor, and working conditions were covered by the terms of a contract between the union on the one hand and appellant on the other. Apparently the owners of the taxicabs, at least tacitly, consented to the exercise by appellant of the authority to make such a contract. It is apparent from appellant's functions that appellant solicits business, designates the particular driver who shall answer each call for service, and generally directs the drivers in their work.

In several states it has been held that one occupying toward the drivers of motor vehicles a relationship very similar to that occupied by appellant toward its drivers, was an employer of such drivers and liable to

third parties for the negligence of its drivers, under the doctrine of *respondeat superior*. *Lassen v. Stamford Transit Co.*, 102 Conn. 76, 128 Atl. 117; *P. & S. Taxi & Baggage Co. v. Cameron*, 183 Okla. 226, 80 P. (2d) 618; *Richmond v. Clinton*, 144 Kan. 328, 58 P. (2d) 1116; *Meridian Taxicab Co. v. Ward, supra.*

We are convinced that there existed between appellant and its taxi drivers the relationship of employer and employee, within the scope of the statute of this state above referred to, and that the trial court did not err in affirming the departmental decision holding that that relationship existed.

The judgment appealed from is accordingly affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.