PETER J. KAUS, d. b. a. the UNITED CAB COMPANY, Appellee, v. UNEMPLOYMENT COMPENSATION COMMISSION et al., Appellants.

No. 45533.

August 4, 1941.

Capel & Jackson and Tinley, Mitchell, Ross, Everest & Geiser, for appellee.

J. Charles Crawley, Homer M. Lyon, and George Finch, for appellants.

GARFIELD, J.—The principal question involved is whether the relation of employer-employee exists between plaintiff and drivers of his taxicabs. Defendant-appellant Commission contends that it does. Plaintiff-appellee claims the relation between him and the drivers is that of bailor and bailee.

Plaintiff-appellee, Peter J. Kaus, operates a taxi business in Council Bluffs under the trade name, United Cab Co. He owns ten taxicabs with the name and insignia of the United Cab Co. painted on each cab. He has a central downtown office and garage together with eleven taxicab stands or stations at convenient places in the city. In the central office he maintains a telephone switchboard connected with the various stations. He employs telephone operators at the switchboard; also a mechanic to keep the taxis in running order. The cabs are operated on two twelve-hour shifts between the hours of six and six. There are twenty drivers during each twenty-four-hour period.

The arrangement between appellee and the drivers is oral. Appellee furnishes the cab, the oil, the switchboard service, the city license to operate as a taxicab and the insurance on the drivers protecting the public. The driver furnishes the gasoline and repairs to the tires. The driver pays appellee $3 for each twelve-hour period and retains as his compensation all

sums collected by him from passengers in excess of the $3 and the cost of the gasoline. The drivers are not required to account to appellee for the amounts taken in by them.

Appellee advertises in the telephone directory and newspapers, holding out such inducements to the public as: "Why not ride in luxury and style when it costs no more? Just call 3434 and a courteous driver will be at your door promptly. * * * You'll ride in luxury and safety. * * * Capable drivers and prompt service." Those desiring taxi service ordinarily call the downtown office. From the office switchboard calls are relayed to the stand best located to answer the call. If the driver at that station is on a trip another station is called. When a driver leaves a station to make a trip he usually notifies the central office that his stand is vacant and another driver then has the privilege of going to that station.

Appellee requires the drivers to refrain from the use of intoxicating liquor, to drive carefully and observe traffic laws, to keep the cabs clean, to be courteous, and to abide by the established schedule of fares. The schedule of fares was agreed upon by the drivers and appellee and is the same schedule used by competitors. Complaints from the police and from customers regarding the drivers are received at the central office. Appellee then "would post something on the bulletin board saying something about being more cautious and keeping within the law." Appellee has "terminated his relationship" with drivers concerning whom there were many complaints. He has terminated the relationship because of reckless or fast driving. Appellee does not permit his drivers to drive for a competing firm. If a driver wants to take time off he notifies appellee, who tries to engage a substitute driver approved by appellee. If no satisfactory substitute is obtainable the driver is expected to operate the cab, or in any event to pay the $3. The arrangement between appellee and any driver may be terminated at any time by either party.

Appellee makes much of the fact that the drivers are given permission to refuse a call if they do not care to make it, and also that they are permitted to use the cars for personal use so long as the $3 is paid. There is evidence that a driver occasionally rejects a call where the trip is too far away "to make any

money on it.'' The principal personal use made by a driver is an occasional trip with his family.

The city ordinances require a license for anyone engaging in the taxi business and the procurement of insurance or a bond for the benefit of those injured or damaged through the negligence or misconduct of any driver. A violation of the ordinances constitutes a misdemeanor. Appellee procured such a license and took out the required insurance covering himself and his employees while operating the cabs. No such license was ever issued to any driver.

From the evidence above summarized the trial court found that appellee was not the employer of the drivers and restrained the Commission from requiring appellee to contribute to the unemployment compensation fund.

In this state equity will restrain the collection of an illegal or void tax. Hubbard v. Board, 23 Iowa 130; Montis v. McQuiston, 107 Iowa 651, 78 N. W. 704; Woodbine Savings Bank v. Tyler, 181 Iowa 1389, 162 N. W. 590. And this rule prevails in Iowa even though there may be an adequate remedy at law. Smith v. Peterson, 123 Iowa 672, 99 N. W. 552; Fort Dodge E. L. & P. Co. v. Fort Dodge, 115 Iowa 568, 89 N. W. 7. Appellant Commission (for the sake of brevity we disregard the fact that the commissioners are also appellants) concedes as much. If appellee is not the employer of the cab drivers, he should not be required to contribute for their benefit to the unemployment compensation fund.

The Unemployment Compensation Law provides:

Section 1551.13 (A) (1), Code, 1939: "* * * contributions shall accrue and become payable by each employer with respect to wages payable for employment as defined in section 1551.25, subsection G.''

Section 1551.25:

"G. 1. Except as otherwise provided in this subsection G, 'Employment' means service * * * performed for wages or under any contract of hire, written or oral, express or implied. "* * *

"6. Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and

until it is shown to the satisfaction of the commission that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact.

"* * *

"M. 'Wages' means all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash. * * *"

Both sides in effect apply the common-law tests of employer-employee to determine the relationship between appellee and his drivers. The courts of some other states have applied such tests in cases arising under similar statutes. Wisconsin Bridge & Iron Co. v. Industrial Com., Ramsey et al., 233 Wis. 467, 290 N. W. 199; Washington Recorder Pub. Co. v. Ernst, 199 Wash. 176, 91 P. 2d 718, 124 A. L. R. 667. In view of the attitude of both parties, we are justified in this case in applying these common-law tests. It is not to be understood from this, however, that we do not abide by the definitions of terms found in the Unemployment Compensation Act itself.

We will not go into an extended discussion of the familiar rules for determining the existence of the employer-employee relationship. These rules are discussed somewhat at length in the recent case of Moorman Mfg. Co. v. Iowa Unemployment Compensation Com., 230 Iowa 123, 296 N. W. 791, where we held the relation was that of independent contractor. See, too, Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; Lembke v. Fritz, 223 Iowa 261, 272 N. W. 300; Restatement of Agency, 483, section 220. The authorities agree that the right of control is the principal test.

It is well settled that a failure to exercise control does not mean that the right of control does not exist. Also, that a servant may be given by his master much freedom in the methods and means whereby he does his work. Lembke v. Fritz, supra; Mallinger v. Webster City Oil Co., supra; Smith v. Marshall Ice Co., 204 Iowa 1348, 1351, 217 N. W. 264. It should be remembered also that absence from the agreement of a provision recognizing the right of control does not mean that no such right exists. The reservation of the right of control is presumed un-

less the contrary appears. Mallinger v. Webster City Oil Co. (see pages 857 and 858 of 211 Iowa); Franks v. Carpenter, 192 Iowa 1398, 1401, 186 N. W. 647. The statute [section 1551.25(G)(6)] requires an affirmative showing of freedom from control both under the contract and in fact.

The distinction between the relations of employer-employee and bailor-bailee is sometimes difficult to draw. Ordinarily where there is a bailment, the employer relation does not exist because the bailor has no control over the bailee and is not responsible to others for his acts. 2 C. J. S. 1027, section 2b; 18 R. C. L. 492, section 2.

In a suit brought by appellee in the United States District Court, seeking to enjoin the enforcement of federal social security taxes, the court held, upon what is apparently almost an identical record, that appellee had failed to prove that the drivers were not his employees. Kaus v. Huston, 35 F. Supp. 327, where the court says at page 331:

"By narrow technical analysis of such relationship and particularly plaintiff's claimed want of control over the drivers, it is argued that the relationship of master and servant does not exist. * * * When all factors are considered and particularly the contractual relationship of the plaintiff with the passengers carried, I think there can be little doubt that plaintiff is operating the line of taxicabs, and that while he has adopted an ingenious method of fixing the compensation of his drivers and permits the drivers to exercise some discretion over the cab during the period of the driver's shift, nevertheless I think there is no discretion vested in the drivers inconsistent with the relation of master and servant. From the very nature of the case the drivers, in order to perform their duties properly, must exercise very complete control over the cabs while they have them out on their shifts."

The above decision, rendered subsequent to the trial of the instant case, was affirmed by the Circuit Court of Appeals which, however, held that the collection of the social security tax could not be enjoined regardless of the relation between appellee and his drivers. Kaus v. Huston, 120 F. 2d 183.

The Circuit Court of Appeals for the Tenth Circuit, re-

versing the Federal District Court, decided on June 23, 1941, that taxi drivers under a similar arrangement were employees within the meaning of the Social Security Act. Jones, Collector, v. Goodson and Scott, 121 F. 2d 176, (opinion by Bratton, J.). Appellee, upon the submission, placed strong reliance upon the reversed decision of the District Court, offering it as the "one recently decided case which is exactly on all fours with the case at bar not only because the facts are identical but because liability for taxation under the Social Security Act was the question at issue."

The Washington Supreme Court on June 6, 1941, upheld a decision of that state's Unemployment Compensation Commission that taxi drivers under a similar arrangement were employees and entitled to unemployment compensation. In the Matter of Farwest Taxi Service, Inc., —— Wash. ——, 114 P. 2d 164.

Substantially the same relationship existing here has frequently been before the courts in cases involving injuries to third persons through the negligence of the cab drivers. These cases, almost without exception, hold that the·relation of employer and employee exists and impose liability on the party occupying a position similar to that of appellee. Among the numerous cases so holding are Meridian Taxicab Co. v. Ward, 184 Miss. 499, 186 So. 636, 120 A. L. R. 1346, and anno., page 1351; Richmond v. Clinton, 144 Kan. 328, 58 P. 2d 1116; P. & S. Taxi Co. v. Cameron, 183 Okla. 226, 80 P. 2d 618; Rhone v. Try Me Cab Co., 62 App. D. C. 201, 65 F. 2d 834; Fitzgerald v. Cardwell, 207 Mo. App. 514, 226 S. W. 971; Lassen v. Stamford Transit Co., 102 Conn. 76, 128 A. 117.

Appellee frankly concedes he would be liable for the negligent acts of the drivers but contends that such liability would be based largely upon principles of estoppel rather than the true relation between the parties. While it does not necessarily follow that the drivers are employees from the fact that appellee would be liable to third parties for their negligent acts, nevertheless, this is a matter to be considered.

The fact that appellee procured the license to operate the cabs has a bearing upon the relation between the parties and indicates that appellee and not the driver is engaged in the taxi

business. Towers v. Watson Bros. Transp. Co., 229 Iowa 387, 294 N. W. 594; Mallinger v. Webster City Oil Co., supra (see pages 856-857 of 211 Iowa). If the drivers are in business for themselves they are violating the ordinances and subject to punishment in not having licenses. The fact that appellee procured insurance covering his employees while "engaged in the operation, maintenance or use of the insured automobiles in the business of the" insured, is also consistent with the claim of appellant. See the Towers case, supra; also Biggins v. Wagner, 60 S. D. 581, 245 N. W. 385, 85 A. L. R. 776, and anno., page 784.

It can scarcely be claimed that the drivers are in business for themselves. At least so far as the public is concerned, they lose their identity except as drivers for the United Cab Co. No driver advertises, insures, owns a cab, maintains an office or stand, or has a business telephone. The public deals with the United Cab Co. Its advertisements promising safe, courteous and prompt service at reasonable cost serve as inducements. When a call is received by appellee he necessarily undertakes to furnish that kind of service and delegates to the drivers the duty so to do. It is not reasonable to conclude that appellee does not direct and require his drivers to serve his customers in the manner he advertises to serve them. Appellee forbids the drivers the use of intoxicating liquor, requires them to drive carefully and observe the traffic laws, to be courteous in dealing with the public, to keep the cabs clean, to conduct themselves so the passengers will not complain of their conduct, and requires them to adhere to the established schedule of fares. He has also dictated which shift the driver shall have and discharged those whose services were not satisfactory.

We think it is not inconsistent with the employer-employee relation that the drivers can, if they see fit, reject calls which would prove unprofitable, or that they have the privilege of making personal use of the cars. Jones, Collector, v. Goodson and Scott, supra. In the very nature of things, no driver will pay $3 and furnish the gasoline to use a taxi for twelve hours and reject many calls or make extensive personal use of the car.

Nor is the fact that the drivers are not paid a stated wage by appellee necessarily inconsistent with the claim made by the

Commission. It is to be noticed that the statutory definition of the term "wages" contained in the law [section 1551.25(M)] is "all remuneration payable for personal services, including commissions," etc. It is not required that the remuneration be paid by the employer. It has frequently been held that payment by the employer is not necessary. Remuneration of an employee may consist of the difference between the price which he pays his employer for goods and the price at which he sells them, a percentage of the sale price of goods sold by the employee to customers and collected by him from them, and various other methods of collecting compensation from customers rather than directly from the employer. Jones, Collector, v. Goodson and Scott, 121 F. 2d 176, and cases cited. In re Morton, 284 N. Y. 167, 30 N. E. 2d 369; Glielmi v. Netherland Dairy Co., 254 N. Y. 60, 171 N. E. 906; Jack & Jill, Inc., v. Tone, 126 Conn. 114, 9 A. 2d 497; Indian Hill Club v. Industrial Commission, 309 Ill. 271, 140 N. E. 871; Powers' Case, 275 Mass. 515, 176 N. E. 621, 75 A. L. R. 1220. The earnings of the drivers over and above the $3 and cost of the gasoline constitute the remuneration or wages for their services and it is not necessary that they be paid directly by appellee.

We think the trial court erred in holding that the drivers were not employees of appellee. Accordingly the judgment is reversed.—Reversed.

All JUSTICES concur.