CHARLES McDONALD, Administrator, Appellant, v. RAY DODGE, d/b/a RAY DODGE MOTOR COMPANY, Appellee.

No. 45740.

December 9, 1941.

P. H. Holleran and Miller & Claussen, for appellant.

E. C. Halbach and Deacon, Sargent & Spangler, for appellee.

GARFIELD, J.—Defendant, Ray Dodge, is an automobile dealer in the city of Clinton. Seldon Orrick had been a salesman for defendant almost continuously since about 1936. Plaintiff contends Orrick was an employee for whose conduct defendant is responsible. It is defendant's claim that Orrick was an independent contractor whom he had no right to control. On the evening of July 15, 1939, decedent, Floyd Fulton, 22 years old, together with Charles Carter, accompanied Orrick, at his invitation, on a trip from Clinton to Sabula. The car belonged to Orrick and was used by him in his work as a salesman. At Sabula, Orrick interviewed one Hoyer in an attempt to interest him in buying a car. Later, Orrick and his two companions attended a dance at Sabula. The return trip was then commenced over paved U. S. Highway 67. When in the vicinity of Heighton's hill, north of Clinton, Orrick's car left the highway. The car and its three occupants were found by one Petersen the following morning near the foot of an embankment, 35 to 40 feet high, on the west side of the highway. Fulton and Carter were both dead. Orrick was seriously injured and subsequently died. There were no eyewitnesses to the tragedy. In fact, so far as the record shows, no one went to the scene of the wreck before Petersen did, some seven to eight hours after it is claimed to have happened.

Plaintiff filed his petition in two counts. The first count seeks to recover from Dodge for negligence of Orrick; the second, so plaintiff contends, charges recklessness on Orrick's part and seeks a recovery under the guest statute, section 5037.10, Code, 1939. At the conclusion of plaintiff's evidence, the court sustained defendant's motion for directed verdict and plaintiff has appealed. One ground of the motion to direct, upon which appellee strongly relies, is that the evidence was insufficient to show that Orrick was his employee. Was this ground of the motion good?

█ The distinction between an employee and an independent contractor has been the subject of frequent consideration by courts and text writers. A number of tests have often been applied. The authorities generally agree, however, that the important test is the degree of retention by the principal of the right to control the details of the work, as well as the result.

Where there is the right to control manner and means of performance, there is an employer-employee relation. Where, however, the subordinate is free to execute the work without being subject to the orders of the principal as to details, he is an independent contractor. 2 Am. Jur. 17, section 8; 5 Am. Jur. 727, section 392; 27 Am. Jur. 486 et seq., section 6; 35 Am. Jur. 448, section 5; 2 C. J. S. 1027, section 2d; Lembke v. Fritz, 223 Iowa 261, 272 N. W. 300; Burns v. Eno, 213 Iowa 881, 240 N. W. 209; In re Amond, 203 Iowa 306, 210 N. W. 923.

██ We consider now the evidence: Appellant called appellee as a witness, who testified that the arrangement with Orrick, made about 1936, was oral. Appellee told Orrick he would be paid on a commission basis for such cars as he sold and that he would be expected to go out and work. Appellee testified:

"He was on a commission and went out and hunted up his prospects and brought them in and we appraised the car and then if he sold them one he was paid for selling the automobile. * * * If we know of anybody that is in the market for an automobile we turn it over to the salesmen to see. * * * After we give them the prospect it is up to them to take care of it. * * * If they take care of it, it is all right and if they don't we don't check them to see. * * * I didn't tell them how to sell them or where or when to go or anything like that."

Appellee also testified that Orrick received no pay other than commissions and rendered no service other than selling cars. He was not required to work any particular hours. Orrick bought his own car that he used as a demonstrator and paid all expenses of its operation. Appellee never gave any instructions to Orrick or any other salesman as to how to drive his car, over what road, or what method, or any details as to driving. The salesmen could handle their cars any way they wanted to.

Orrick and other salesmen all took turns on the floor of the garage. "If there were six salesmen, one salesman would have one day on the floor and the prospects that came in on that day would belong to him, and then the next day another salesman would have it and the prospects that came on the floor would belong to him on that day." When a prospect came to the

garage, the salesman on the floor at the time would prepare a card, presumably containing the name and address of the prospect and the name of the salesman. The cards were merely for the protection of the salesman so there would not be more than one salesman working on the same prospect. There were meetings of the salesmen about once a week for the purpose of stimulating sales. The salesmen were not required to attend the meetings but most of them did attend.

The above is substantially all the testimony as to the status of Orrick, except for one matter hereafter to be mentioned. It is without dispute. We think the testimony insufficient to have warranted a jury finding that Orrick was an employee subject to appellee's control. We believe Orrick's status, as a matter of law, was that of independent contractor.

In several other states, salesmen for automobile dealers have been held, under substantially similar evidence, to be independent contractors and not employees. Among cases so holding are: Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025; James v. Tobin-Sutton Co., 182 Wis. 36, 195 N. W. 848, 29 A. L. R. 457; Magee v. Hargrove Motor Co., 50 Idaho 442, 296 P. 774; Manus v. Kansas City Dist. Corp., 228 Mo. App. 905, 74 S. W. 2d 506; McCraner v. Nunn, 129 Kan. 802, 284 P. 603; Premier Motor Mfg. Co. v. Tilford, 61 Ind. App. 164, 111 N. E. 645. See also, as supporting our conclusion, the following cases in which salesmen have been held to be independent contractors: Holloway v. Nassar, 276 Mich. 212, 267 N. W. 619; Aldrich v. Tyler Groc. Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; Neece v. Lee, 129 Neb. 561, 262 N. W. 1. As having some bearing, see Goodrich v. Musgrave Co., 154 Iowa 637, 135 N. W. 58.

Appellant argues that the reservation of the right to control is presumed unless the contrary appears, citing Kaus v. Unemployment Comp. Com., 230 Iowa 860, 299 N. W. 415; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; and Franks v. Carpenter, 192 Iowa 1398, 186 N. W. 647. While we recognize the above rule of law, we think it sufficiently appears here that Orrick worked, and had the right to work, according to his own methods and was not subject to appellee's control except as to results. It must be remembered, too, that

the burden rested on appellant to prove by a preponderance of the evidence the claimed employer-employee relation.

But, appellant says in effect, assuming that Orrick was not, generally, an employee, such was his status at the particular time of this tragedy. The basis for this contention is as follows: The day preceding the fatal Sabula trip, Orrick had called on the prospect, Hoyer, at his home in Sabula, with a car to demonstrate. Appellee accompanied Orrick on this previous trip. They had a car to be taken to near-by Savanna. The conversation with Hoyer 'was between him and Orrick but, Hoyer testified, it "could have been" in appellee's presence,—he was there. Hoyer did not like the car being demonstrated to him. So, Hoyer testified:

"Mr. Dodge [appellee] suggested to Orrick to see me the next day about probably another car, but at the same time Orrick said his wife had to be taken to the hospital the next day, so I told him not to bother with me; to take care of his wife."

The fatal trip occurred the evening of the day following the suggestion from appellee, and Orrick went back to see Hoyer before going to the dance in Sabula, as heretofore related. On the foregoing record, appellant earnestly argues that at the time of the wreck, Orrick was doing merely what he had been directed by appellee to do.

We are unable to agree that the *suggestion* from appellant to Orrick, assuming the second trip to Sabula to.have been made pursuant thereto, is sufficient to constitute Orrick an employee. The control necessary to render a subordinate an employee must be *authoritative* control as distinguished from mere suggestion or cooperation as to detail. 27 Am. Jur. 488, section 6; Annotation, 19 A. L. R. 226, at 239; Royal Indemnity Co. v. Industrial Acc. Com., 104 Cal. App. 290, 285 P. 912. Suggestions similar to that made by appellee are frequently given by a principal to an independent contractor without changing the legal status of the parties. Badger Furn. Co. v. Industrial Com., 200 Wis. 127, 227 N. W. 288; Litts v. Risley Lbr. Co., 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147.

Although the above is determinative of the appeal, we believe another ground of the motion to direct was good. We

think the only right of recovery appellant possibly had, in any event, was under Count II of his petition. It was therefore necessary for appellant to prove that the proximate cause of the accident was the reckless operation of the car by Orrick. Proof of recklessness upon which appellant relies is a statement by Orrick the morning after the wreck testified to by the witness, Petersen, as res gestae. The witness said that Orrick told him a loose wheel from a car driven in the opposite direction came across the road, struck Orrick's car and caused him to lose control; also that Orrick said he was driving around 80 miles per hour, but that the loose wheel was the cause of the accident. The deputy sheriff found the loose wheel. It was made of steel and had a dent in the rim ''as if it had been struck forcefully.'' This is substantially all the evidence as to the cause of the accident.

Assuming, without deciding, the admissibility of Petersen's testimony, it establishes, we think, that the proximate cause of this accident was not recklessness but the fact that the loose wheel struck the Orrick car. This is what caused the driver to lose control of the car. It may be conceded that 80 miles per hour is an excessive speed, although we are not prepared to say that it alone would amount to recklessness. See Mayer v. Sheetz, 223 Iowa 582, 273 N. W. 138. But there is no evidence to justify a finding that speed caused the accident or that Orrick was not in complete control of the car until it was struck by the loose wheel. As somewhat in point, see Wright v. What Cheer Co., 221 Iowa 1292, 267 N. W. 92.

Other questions argued have been carefully considered but it is not necessary for us to discuss them. We hold that the trial court properly directed a verdict for defendant.—Affirmed.

All JUSTICES concur.