CHARLES SMITH, Appellee, v. MARSHALL ICE COMPANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Contractor (?) or Employee (?) A carpenter who, in repairing an ice house, is subject to the direction of the master as to the *manner and means* of doing the work may properly be found to be a "workman" or "employee," within the meaning of the Workmen's Compensation Act, even though the master, because of his confidence in the employee, does not exercise such power. (See Book of Anno., Vols. I, II, Sec. 1421.)

**MASTER AND SERVANT:** Workmen's Compensation Act—Refusal to Submit to Examination. Before an injured employee will be denied compensation because of his refusal to submit to a medical examination, it must appear that the proposed examining physician was *authorized* to practice, under the laws of this state.

**MASTER AND SERVANT:** Workmen's Compensation Act—Conclusiveness of Findings. The finding of the industrial commissioner, on competent but conflicting testimony, that the loss of sight was caused by a certain injury, is conclusive on the courts. (See Book of Anno., Vols. I, II, Sec. 1452.)

Headnote 1: Workmen's Compensation Acts—C. J. p. 50. Headnote 2: Workmen's Compensation Acts—C. J. p. 107. Headnote 3: Workmen's Compensation Acts—C. J. p. 123.

Headnote 1: L. R. A. 1916A, 118, 247; L. R. A. 1917D, 148; L. R. A. 1918F, 206; 28 R. C. L. 762. Headnote 2: L. R. A. 1917D, 173; 28 R. C. L. 815. Headnote 3: L. R. A. 1917D, 189; 28 R. C. L. 828.

*Appeal from Marshall District Court.*—CLARENCE NICHOLS, Judge.

JANUARY 10, 1928.

Claim for compensation under the Workmen's Compensation Act. An award was granted the claimant, which, on appeal, was affirmed by the district court.—*Affirmed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Holt & Albee,* for appellee.

FAVILLE, J.—In January, 1925, the appellee was engaged in repairing an ice house belonging to the Marshall Ice Company. While engaged in said work, he moved a ladder, and a large iron washer that had been left on top of said ladder fell, striking the appellee over his right eye. The skin was cut, and the appellee's eye was blackened. He did not consult a physician at the time, and home remedies were applied to the eye. He resumed work the next day, and kept his eye tied up for a week or more. He did not lose time from his employment, and in February following, he noticed difficulty with the eye. He consulted a doctor, the latter part of March, 1925. This doctor was not a witness in the case. The claim for compensation was filed December 8, 1925, approximately eleven months after the accident. The appellee was examined in December, 1925, by a doctor who testified as a witness for the appellants, and in May, 1926, was examined by a physician who testified for the appellee.

I.  It is contended that the appellee was not an employee, within the terms of the Workmen's Compensation Act, but was an independent contractor, and therefore not entitled to compensation. Section 1421, Subdivision 2, Code of 1924, is as follows:

1. MASTER AND SERVANT: Workmen's Compensation Act: contractor (?) or employee (?)

" 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

Code Section 1421, Subdivision 3, is in part as follows:

"The following persons shall not be .deemed 'workmen' or 'employees:' * * * c.  An independent contractor."

It is the universal holding of the courts that the Workmen's Compensation Act must be liberally construed, to effect its obvious purpose and intent. Such is our rule. *Rish v. Iowa Portland Cement Co.*, 186 Iowa 443; *Bidwell Coal Co. v. Davidson*, 187 Iowa 809. The evidence with regard to the character of the employment of the appellee is found solely in his own testimony. We quote therefrom as follows:

"I am in the carpenter business, and have been doing carpenter work for 40 years. I am a contractor, so I don't have

to belong to the union. At the time this injury occurred, I was paid 85 cents per hour, or something like $42 a week. I had been working for Mr. Nelson of the Marshall Ice Company, in all 2 months. I worked for him for 8 months after that,—10 months altogether. I was paid by the hour. I have worked for the Marshall Ice Company before at the same kind of work; I built one of their ice houses. * * * I was my own boss when I was working for the ice company. Chris Hanson was helping me. They paid him; he wasn't my man. I had charge of the work. They didn't tell me how to do the work; I knew how. I told Hanson how. I tried to put in about the same number of hours per day, 8 hours. It would be to my advantage to get in as much time as I could, but I didn't work over 8 hours. I am a contract carpenter, and have been for 25 years, anyway. Every other week I would give the ice company a bill for the time I had put in, then they would pay me what the bill showed. They didn't keep time for me. They always paid the bill as I brought it in. I was just hired by the hour, to do that work of fixing up the old ice house and work around. At the time I was hurt, I was fixing the ice house. The job I had on hand then was fixing up this ice house. * * * Just the ice houses, was the only job I was doing at that time. I knew what had to be done. Nobody came out there and told me what to do; we just did it. They let me do the repairs, and left it to me as to what we should do.''

There were also offered in evidence the several statements rendered by appellee for his services. Said statements recite:

''Marshall Ice Co., in account with Charles Smith, contractor and builder, 529 North 2d Street.''

The question of whether a claimant for compensation is an employee, within the terms of the Workmen's Compensation Act, or is an independent contractor, has frequently been before the courts. We discussed and reviewed the authorities at length in *In re Estate of Amond*, 203 Iowa 306. It is unnecessary that we repeat at this time the discussion therein contained, or again review the authorities on the question, which are cited in the *Amond* case. In said case we said:

''Looking to our own cases, we find that the test quite uniformly applied in this state is: Does the employee represent the master as to the result of the work only, or as to the means by which the result is obtained? If as to the result, and in the

employment of the means he acts entirely independently of the master, he must be regarded as an independent contractor. *Overhouser v. American Cereal Co.*, 118 Iowa 417. In all of the cases decided by this court, particular emphasis has been given to the right of the employer to dictate and control the manner, means, and details of performing the services. * * * In each of these cases, the determinative question was: Did the employer have the right to direct the workman as to the manner and means of doing the work,—that is, did he exercise control over him as to the means employed and manner of rendering the services? * * * The decisions in other jurisdictions are not entirely in harmony with the rule announced by this court, but all courts recognize the reserved right of the employer to control the method and means of doing the work, rather than merely the result, as factors to be considered in determining whether the claimant was an employee or an independent contractor.''

These general rules are recognized in other decisions which are cited in the *Amond* case. Applying these rules to the instant case, we hold that the industrial commissioner and the district court did not err in finding that the appellee was an employee of the appellant ice company, and not an independent contractor. The appellee was employed for the general work of repairing the ice house of the appellant ice company. He did not undertake to do the work as a contractor, who was being paid by the job. The employer had the right to direct him as to the manner and means of doing the work. Even though it be true that, because of the confidence reposed in the employee, the employer left the manner of making the repairs largely to the knowledge, skill, and judgment which he knew the employee possessed, he still had the reserved right to control the method and means of doing the work, and the employee was at all times subject to any instructions or directions from the employer in regard thereto. The finding of the industrial commissioner that the relation of employer and employee existed, and that the appellee was entitled to compensation as such employee, is supported by the record. In addition to the cases cited in the *Amond* case, supra, see also, as bearing on the question herein discussed, *Board of Com. v. Shertzer*, 73 Ind. App. 589 (127 N. E. 843) ; *American Steel Foundries v. Industrial Board*, 284 Ill. 99 (119 N. E. 902).

II. The appellants contend that, in any event, the appellee was not entitled to compensation for the full period allowed by the commissioner, because of a claimed refusal on the part of the appellee to submit to a physical examination.

**2. MASTER AND SERVANT:** Workmen's Compensation Act: refusal to submit to examination.

Section 1399, Code of 1924, is as follows:

"After an injury, the employee, if so requested by his employer, shall submit himself for examination at some reasonable time and place within the state and as often as may be reasonably requested, to a physician or physicians authorized to practice under the laws of this state, without cost to the employee; but if the employee requests, he shall, at his own cost, be entitled to have a physician or physicians of his own selection present to participate in such examination. The refusal of the employee to submit to such examination shall deprive him of the right to any compensation for the period of such refusal. When a right of compensation is thus suspended, no compensation shall be payable for the period of suspension."

Appellants contend that, on January 7, 1926, and on January 20, 1926, they demanded of the appellee that he go to the city of Des Moines, from Marshall County, where he resided, for examination by Dr. Pearson, and they claim that appellants offered to pay appellee's expenses for making said trip. In regard to said matter, the industrial commissioner found:

"In pleadings of record, defendant's chief resistance is based upon the allegation that claimant refused to submit himself to examination by the department eye specialist, Dr. Pearson, as requested. Such refusal subjects claimant to censure for denying a statutory right vested in defendant, which might have afforded a serious bar to recovery. However, claimant did submit himself to examination by Dr. Pearson shortly after the arbitration hearing, and the report of the specialist in the department file indicates that no prejudice to the case of the defendant resulted from previous obstinacy of claimant."

The showing with regard to the demand made upon the appellee by the employer for the examination is not entirely satisfactory. It appears from the finding of the commissioner that the claimant did submit himself to an examination by Dr. Pearson shortly after the arbitration hearing, and the report was in the departmental files before the hearing before the industrial

commissioner. This report was not offered in evidence, nor was Dr. Pearson produced as a witness by the appellants. There is no showing of a strict compliance with the requirements of said Section 1399 on the part of the appellants, in that it nowhere appears in the record that the Dr. Pearson referred to is "a physician authorized to practice under the laws of this state." This is a matter of which the court cannot take judicial notice; and while it is technical, the requirement of the statute itself is technical, and before the penalty that follows a failure to submit to examination can be imposed, the requirements essential to bring about such a result must be fully complied with.

Upon the entire record, we are of the opinion that the industrial commissioner and the trial court did not err in refusing to deny compensation for failure to submit to examination.

III. Appellants strenuously contend that the evidence is insufficient to sustain the findings of the industrial commissioner that the loss of the sight in the appellee's eye was the proximate result of the injury inflicted by the iron washer. There is no dispute in the record with regard to the fact that the appellee was struck by the falling iron washer in the manner claimed by him.

3. MASTER AND SERVANT: Workmen's Compensation Act: conclusiveness of findings.

There is a dispute in the record as to whether or not the loss of sight in his eye resulted from said injury. Briefly stated, it is the contention of the expert offered by the appellee that the loss of sight in appellee's eye is due to a traumatic cataract caused by the injury complained of. On the other hand, it is the contention of the expert in behalf of the appellants that the loss of sight in the appellee's eye is due to atrophy of the optic nerve, which is of gradual development, and that said atrophy might be caused by many other things than a blow of the kind the appellee received. The expert witness for appellants testified that he discovered an atrophy of the optic nerve in appellee's eye, and that, in his opinion, the injury to appellee from the blow would not cause such atrophy of the optic nerve. It also appeared from his testimony that atrophy is a slow process of gradual wasting, and that it may be caused by a number of different things, such as locomotor ataxia, syphilis, malaria, diabetes, acromegaly, impaired nutrition, arteriosclerosis, and certain poisons, including wood alcohol. The contention of the appellants, briefly stated, is to the effect that, because it appears from the

record that medical science recognizes that atrophy of the optic nerve may be caused by these various things, whether or not the atrophy of the optic nerve in appellee's eye was caused by the injury complained of, or by some one or more of the other possible causes enumerated, leaves the question of the actual cause of the condition found, one of conjecture and speculation. We have recognized the rule that the burden rests upon the claimant to establish by a preponderance of the evidence that the injury complained of was the proximate cause of the result for which compensation is sought. We have also held that, where the cause of the condition is wholly uncertain, problematical, and conjectural, an award cannot be sustained, under the Compensation Act. *Slack v. Percival Co.*, 198 Iowa 54; *Guthrie v. Iowa Gas & Elec. Co.*, 200 Iowa 150; *Sparks v. Consolidated Indiana Coal Co.*, 195 Iowa 334. The instant case, however, is one where the evidence is in conflict with regard to the cause of the condition in the appellee's eye. One expert witness attributed it to the injury. There were circumstances corroborative of this theory. The commissioner found from the evidence that the appellee had established his claim that he was suffering from traumatic cataract, which had been produced as a result of the blow from the iron washer. The fact that appellants' expert testified that the condition which he found in appellee's eye at the time of his examination was not the same as described by the appellee's expert, and that the cause of said condition might have been one of a variety of things other than the blow complained of, merely presented a question of conflict of evidence; and we have repeatedly held that, under such circumstances, the decision of the commissioner has the force and effect of a verdict of the jury, and, there being substantial competent evidence in the record to support the same, it will not be disturbed by us on appeal.

In this state of the record, the award of the industrial commissioner and the judgment of the district court must be, and they are,—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.