Mary Schlotter, appellee, v. Richard A. Leudt, defendant, and Lucille's Pie Shop, Inc., appellant.

No. 50935.

(Reported in 123 N.W.2d 434)

SEPTEMBER 17, 1963.

Alfred G. McSwiggin, of Williamsburg, and Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, for appellant Lucille's Pie Shop, Inc.

Messer & Cahill, of Iowa City, for defendant Richard A. Leudt.

Leff & Leff, of Iowa City, for appellee.

THORNTON, J.—The principal question for determination is

whether there is substantial evidence to sustain a jury finding defendant Leudt was an employee of defendant Pie Shop.

The Pie Shop is located in Milan, Illinois. It bakes pies and markets 90 percent of them through three routemen or distributors. The other 10 percent is sold direct to retail trade. Defendant Leudt is one of the routemen, he purchased his route and truck from two men for $3500. The transfer was evidenced by a "Pie Distribution Agreement", Exhibit "E". It transfers to Leudt the truck and right to distribute pies in Iowa City and twenty-one customers in Rock Island and Davenport. The two transferors were restricted from selling pies to the "above mentioned customers" for a period of two years. It does not appear in the agreement but from other evidence this transaction was subject to approval of the Pie Shop. It controlled who was going to operate the route. Leudt had a written contract with the Pie Shop, Exhibit "F". Therein the Pie Shop agreed to sell pies to Leudt in such quantities as may be required for resale by him. The Pie Shop was given the right to fix the price at which it sold the pies to Leudt and at which Leudt could sell the pies to the trade. Such prices were subject to change by the Pie Shop on the first day of each month. We will consider the other provisions of this contract later.

Plaintiff's own testimony showed only that she recognized Leudt as the driver of the truck and it had "Lucille's Pies" painted on it. She called Leudt as her witness and from his testimony, in addition to identification of Exhibits "E" and "F", it appears he purchased the pie route about two years before the accident. In operating the route, he owns his own truck, pays all of his own expenses, he bought the pies at the price fixed, paid for them within 48 hours, or settled up at the end of the week, he carried his own charge accounts, except in the case of some (how many does not actually appear) large accounts carried by the Pie Shop after such have been approved by the Pie Shop. If he purchased more pies than he could sell he suffered the loss. The only pies he could return were those unsatisfactory due to the fault of the Pie Shop. He sold doughnuts received from another supplier. In operating the route he had no schedule, regular hours, or list of customers as set up or directed by

the Pie Shop. In actual practice he loaded pies at a certain time by agreement with the other drivers and made the route everyday, six days a week. He could solicit new customers without regard to the Pie Shop, in this regard he had to receive approval from the other drivers in the Quad Cities but not on the route to and in Iowa City. He filed his income tax return as a self-employed individual. He received no compensation from the Pie Shop and it did not carry him as an employee on its records or make payroll deductions or payments of tax as if he were an employee. He made no report of sales to the Pie Shop, he merely settled for the pies he purchased and was given credit for the approved charge customers. In a few instances he used other help. He used a sales book with the name "Lucille's Pies" on it, supplied by the Pie Shop. He sold the route and this transaction was approved by the Pie Shop. The Pie Shop furnished a few pies for promotional reasons but had no sales or route organization. This presents a general picture of Leudt's connection with the Pie Shop. More details will be considered separately as argued by counsel.

Mr. Leudt is either an employee or an independent contractor.

The most important consideration in determining whether a person giving service is an employee or an independent contractor is the right to control the physical conduct of the person giving service. If the right to control, the right to determine, the mode and manner of accomplishing a particular result is vested in the person giving service he is an independent contractor, if it is vested in the employer, such person is an employee. Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 348, 107 N.W.2d 102, 107; Sanford v. Goodridge, 234 Iowa 1036, 1042, 13 N.W.2d 40; Norton v. Day Coal Co., 192 Iowa 160, 165, 180 N.W. 905; McDonald v. Dodge, 231 Iowa 325, 327, 328, 1 N.W.2d 280; and citations in each of the above. The employer of an independent contractor does and may properly retain control necessary to see the result is obtained according to plan. Hassebroch v. Weaver Construction Co., 246 Iowa 622, 632, 67 N.W.2d 549; and Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 673, 674, 6 N.W.2d 6,

Other considerations are, whether the one employed is engaged in a distinct business, whether in the locality the work is usually done under supervision or by a specialist without supervision, skill required, furnishing of tools and equipment, time limit of employment, method of payment, whether work is a part of regular business of employer, whether parties believe they are creating one or the other relationship, and whether the principal is or is not in business. Restatement, Agency 2d, section 220; and Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254.

Ordinarily the construction of a written contract is for the court. However, plaintiff here is not a party to the contract and she is entitled to the benefit of all available evidence to show the actual relation of Leudt and the Pie Shop. And this is true where the contract does not cover the entire agreement. Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 351, 107 N.W.2d 102, 108; Sanford v. Goodridge, 234 Iowa 1036, 1044, 13 N.W.2d 40, 45; and citations.

Plaintiff is entitled to the most favorable construction the evidence will reasonably bear on the question of defendant Leudt's status as an employee. Plaintiff in argument advances some eleven facts, including the contracts, as showing Leudt is an employee of the Pie Shop. These facts are undisputed, we are concerned with the inferences that may properly be drawn from them.

We will examine these, leaving the contracts until last. Leudt picked up the pies at the same time each day throughout the week and the same schedule (or perhaps time is a better word) was followed while Leudt worked for the Pie Shop. We fail to see how an inference of control can be drawn from this fact standing alone. Any routeman would have to pick up his supplies. That this was done so as not to conflict with other routemen or at a particular time so as to make his deliveries to his customers shows no more than this was for the convenience of his customers and to his profit. There is no suggestion he was required to load or start his route at anytime by the Pie Shop.

The fact Leudt reported each day, paid for pies previously purchased and checked to see if complaints had been made does

not lead to an inference of detailed control. An independent contractor would have to pay for the pies under some plan. The fact of complaints being made to the Pie Shop and his checking for such purpose shows no more than a practical way to handle such. The evidence indicates some of these complaints would be taken care of by him, some by the Pie Shop, depending on who was at fault.

The fact the name "Lucille's Pies" and the Pie Shop telephone number appeared on Leudt's truck as well as the use of sales books bearing the name of the Pie Shop indicates no more than advertising that would be beneficial to both and does not indicate detailed control. The evidence does not show Leudt was required or directed to use the books or paint the truck. The evidence is that he had the name painted on the truck at his expense after asking permission.

Handling of the larger charge accounts by the Pie Shop is simply a matter of financing. Leudt did receive payment in advance of the payment of these accounts. No evidence was introduced bearing separately on losses on these accounts, but plaintiff did introduce Leudt's testimony that he bore the losses generally.

The fact some 20 to 25 pies were furnished by the Pie Shop for promotional purposes shows only another advertising method mutually beneficial to Leudt and the Pie Shop. There is no showing of detailed control or requirement in this regard by the Pie Shop.

Adverting to the written agreements, Exhibits "E" and "F", a pertinent statement of law bearing on the construction of these agreements is found in Arne v. Western Silo Co., 214 Iowa 511, 517, 242 N.W. 539, 542. It is:

"In the construction of a contract involving a contractor's relationship, the contract must be construed from 'its four corners' and not from an isolated paragraph. Courts must declare the intention of the parties from the language employed in the entire instrument, regardless of the classification of the parties as determined by themselves, bearing in mind that it is not the nomenclature which the contract uses, but the provisions which it makes for control of the details of the work that determine the status of the parties."

It is clear the Pie Shop did control who was to operate the routes. Its apparent purpose was to obtain the service of competent, trustworthy men to handle the distribution of its pies, and thus gain maximum distribution. The record shows it or its predecessor, a single proprietor, now president and principal stockholder, had never distributed its pies in its own trucks by drivers carried on its payroll as employees. It did own a pie truck but the only use of this truck for route distribution was when rented for an agreed price by one of the routemen when his truck was out of service. As near as may be, the baking of pies and distribution of them constituted distinct businesses. The Pie Shop had no route supervisor, sales force or sales meetings.

The contract, Exhibit "F", between Leudt and the Pie Shop, in view of the other contract and circumstances, is a contract for the distribution of pies over a fixed route for an indefinite time. This brings us to the question of the right to control the details of the work, the mode and manner of obtaining the result, as embodied in the contract. The evidence does not show such control was actually exercised but if such right is a permissible inference from the terms of the contract at least a case was made for the jury.

The manner of fixing prices reserved by the Pie Shop does not warrant an inference of reserved detailed control. Certainly it has a bearing on distribution where the price is fixed at which the distributor must buy and at which he must sell, and such may be changed on the first of every month, but this does not control the manner and mode of making distribution. Actually the prices were only changed once during the two-year period Leudt had the route. Leudt was selling his pies to the trade, not those of the Pie Shop. His financial gain was in the difference in price and could be increased by his own efforts. This is payment for a result not for the performance of work. 56 C. J. S., Master and Servant, section 3(8), pages 58, 59.

The next paragraph clearly gives Leudt one right compatible only with the right of an independent contractor, i.e., the right to place another truck in service if he so desires subject only that it be subject to the terms of the agreement. This con-

templates that he hire another driver and he, Leudt, receive the profit from the use of such truck. This negatives adverse implications in the first part of the paragraph where it is stated, "this contract will cover one truck only, and that the one truck is to be operated by the Party of the Second Part [Leudt] only." Fairly construed this paragraph does not prevent Leudt from hiring extra help but only restricts as does the next paragraph from selling the route or placing another in charge of the route without the approval of the Pie Shop. Here again the restriction bears on the result to be obtained, not the detail of accomplishing it.

The next paragraph provides, "The Party of the Second Part agrees not to engage in any other business or occupation actively or inactively as long as the Party of the Second Part is engaged in selling pies for the Party of the First Part." This certainly restricts the routeman from taking other work. However, in actual practice Leudt did sell doughnuts obtained from another source all the while he had the route. The Pie Shop did not object to this. Again we do not find a permissible inference of control of detail, it does control Leudt, but the control is to obtain his personal attention to the route and to prevent him from handling a product of a competitor. See Hilyar v. Union Ice Co., 45 Cal.2d 30, 286 P.2d 21, 26.

The next paragraph reserves to the Pie Shop the right to control and dispose of all special, telephone and personal orders received from customers not contacted by Leudt in respect to such orders. In actual practice such were usually turned over to the driver on whose route these fell under the same price terms. By its very wording this paragraph negatives an inference of control of the route.

The next paragraph provides for termination of the contract on thirty days notice in writing by either party, and provides, "except in case of breach, when the same shall be forfeited absolutely."

**Plaintiff** argues this clause as granting the right to discharge without notice and without cause. She contends this clause when coupled with the noncompetition for a period of two years on termination clause gave the Pie Shop a complete and

absolute right to control the most minute detail of Leudt's performance of his duties in distributing and delivering pies. Certainly the noncompetition clause does not control the details of the work. The contention apparently is that the two clauses put power in the Pie Shop's hands to demand, direct and control matters not otherwise covered in the agreement. Certainly it is economic power. However, the right to terminate a contract on written notice is not usually considered the same as the right to discharge without cause. Mountain Meadow Creameries v. Industrial Accident Commission, 25 Cal. App.2d 123, 76 P.2d 724, 727; and Hilyar v. Union Ice Co., 45 Cal.2d 30, 286 P.2d 21, 28. In Hassebroch v. Weaver Construction Co., 246 Iowa 622, 629, 67 N.W.2d 549, 554, the fact the principal had the right to terminate the relationship was recited as one of the factors sustaining the industrial commissioner's finding a decedent was an independent contractor. See also Arne v. Western Silo Co., 214 Iowa 511, 514, 242 N.W.2d 539; Mallinger v. Webster City Oil Co., 211 Iowa 847, 853, 234 N.W. 254. In Sanford v. Goodridge, 234 Iowa 1036, 1043, 13 N.W.2d 40, we did say the presence of a two-week notice of cancellation provision renders a contract termed an independent contractor agreement somewhat suspect where the contract calls for daily services. We also said with the full sweep of the clause employer control could be exerted. This was said in the face of the testimony of a route supervisor who stated he had hired and fired 10 or 15 routemen and gave no written notice. The evidence also showed the routemen gave no notice when they quit. In fact the evidence in the Sanford case was such as to sustain a finding the entire contract under consideration was a subterfuge.

In the present case there is no evidence to warrant a finding the contract is a subterfuge. The evidence is the Pie Shop has never terminated a route contract. When Leudt transferred his route the new man was approved by the Pie Shop. There is no showing as to whether a thirty-day notice was given.

The last sentence of the paragraph giving the right to forfeit the contract for a breach can under the contract and the record made relate only to the terms of the written agreement none of which relates to control of the details of performance but only to results.

If the termination provision of this contract is evidence to support an inference of the right of detailed control, which we do not think it is, it is no more than a scintilla and insufficient to support a finding.

Plaintiff cites Franks v. Carpenter, 192 Iowa 1398, 186 N.W. 647, and Smith v. Marshall Ice Co., 204 Iowa 1348, 217 N.W. 264, as supporting her position on the right to control the details of the work in the absence of its exercise. In the Smith case the reserved right of an employer to control the method and means of doing the work is mentioned as sustaining the finding of the industrial commissioner at page 1351 of 204 Iowa, page 266 of 217 N.W. From the entire record, the work to be performed and method of payment, and perhaps a reserved right of control, see pages 1401 and 1402 of 192 Iowa, page 648 of 186 N.W., the Franks case also sustains the finding of the commissioner.

In Hassebroch v. Weaver Construction Co., 246 Iowa 622, 632, 67 N.W.2d 549, 555, is the correct statement, "Every contract for work reserves to the employer a degree of control, at least to enable him to see that it is done according to the contract. Such limited control does not necessarily indicate a master-servant relationship."

In McDonald v. Dodge, 231 Iowa 325, 329, 330, 1 N.W.2d 280, 283, the rule is recognized and it is there pointed out the burden rests on the plaintiff in a common-law action, as here, to prove by a preponderance of the evidence the claimed employer-employee relationship.

The evidence on behalf of the Pie Shop, by its president and principal stockholder, and its secretary-treasurer, shows it was without knowledge of Leudt's customers except the large charge accounts and perhaps some telephone orders. It gave no directions to Leudt on handling his route or customers. It did not advertise, other than as mentioned. The company at no time distributed pies. Leudt or the other routemen were not carried on the company books as employees in any manner. These company officers did not consider the routemen employees. This evidence is not helpful to plaintiff.

As supporting our holding here in addition to the cases

above cited see W. D. Haden Co. v. Ryman, 362 S.W.2d 133 (Tex. Civ. App. 1962); National Trailer Convoy, Inc., v. Employment Security Agency of Idaho, 83 Idaho 247, 360 P.2d 994; Burns v. Eno, 213 Iowa 881, 240 N.W. 209; Gulf Refining Co. v. Brown, 93 F.2d 870, 116 A. L. R. 449 (4th Cir. 1938); Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21; Dortch Baking Co. v. Schoel, 239 Ala. 266, 194 So. 807; Brownrigg v. Allvine Dairy Co., 137 Kan. 209, 19 P.2d 474; MacDonald v. Gillio, 181 Wash. 673, 44 P.2d 783; Malcolm v. American Service Co., 118 W. Va. 637, 191 S.E. 527; and White v. J. R. Watkins Co., 1 Wash.2d 466, 96 P.2d 456.

The case is reversed and remanded with directions to sustain the motion for judgment notwithstanding the verdict of defendant Lucille's Pie Shop, Inc.—Reversed and remanded.

All JUSTICES concur except LARSON, J., who takes no part.