David E. WELTER and Welter AG Services, Limited, Appellants,

v.

HUMBOLDT COUNTY, Iowa and Bruce Raemaker, Appellees.

Charles H. WELTER, Plaintiff,

v.

HUMBOLDT COUNTY, Iowa, Barry Raemaker and Bruce Raemaker, Defendants.

No. 89–231.

Court of Appeals of Iowa.

June 26, 1990.

C. Joseph Coleman, Jr., of Mitchell, Coleman, Perkins & Enke, P.C., Fort Dodge, for appellants.

James L. Kramer and Neven J. Mulholland of Johnson, Erb, Latham, Gibb, & Carlson, P.C., Fort Dodge, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

OXBERGER, Chief Judge.

The plaintiffs, David E. Welter and Welter Ag Services, Ltd., appeal a judgment entered by the trial court, following a jury trial, finding plaintiffs were not entitled to damages for damage done to their property by the spraying by the county of ditches in front of plaintiffs' home. We affirm.

The plaintiffs contend the trial court erred in: (1) instructing the jury on the concept of independent contractor both in failing to require the defendants to prove this affirmative defense and by implying it had been proven; (2) requiring the defendants to prove a nondelegable duty or legal status to the jury and it should have held that spraying was a nondelegable duty; (3) instructing that damages could not be found if the trees in question were used as a windbreak; and (4) instructing the jury that a failure to minimize damages on the part of the plaintiffs would result in no recovery.

In 1985 Humboldt County had hired Barry and Bruce Raemaker to spray ditches in Humboldt County during the summer of 1985. The plaintiffs, David and Charles Welter, are brothers who farm in Humboldt County and live relatively close to each other. On June 8, 1985, on a record-setting hot day, Bruce Raemaker sprayed the road ditches next to and across from the David Welter residence with a chemical known as Brayton Brush Killer. The chemical is used to kill weeds and trees growing in the ditches. When Raemaker approached the Welter residence, he shut off the sprayer, since the wind was blowing strongly and Raemaker wanted to avoid any drift of the chemical into the Welter garden. Once past the Welter home, Raemaker resumed spraying.

Because of the hot and windy conditions, Raemaker decided to stop spraying. He pulled the sprayer off the road and parked it immediately adjacent to a corn crib filled with popcorn.

The next morning David Welter noticed that the leaves of his plants in his garden were beginning to curl. Welter also noticed that the weeds along his lawn were also dying. Welter noticed the sprayer parked next to his brother Charles' corn crib. Charles Welter, upon a call from David, immediately went to the crib. He found the sprayer locked, so he placed a steel post in front of the sprayer and let the air out of one tire. The sheriff's department subsequently contacted Raemaker, who removed the sprayer.

David and Charles Welter subsequently brought this consolidated action against Humboldt County and the Raemakers on the grounds that the chemical used in spraying the ditches had caused damage to some of the 400 different trees planted on David's property and had tainted the popcorn in Charles's corn crib. David claimed that he had planted the trees two years previously and had planted them for a windbreak and for his own enjoyment. David alleged that nearly twenty trees died or were stunted, and that total replacement cost was $3200.

Charles Welter alleged that because the sprayer was parked right next to the crib, the popcorn became tainted with the weed killer due to the windy conditions, and that as a result he was unable to sell his popcorn to the Quinn Popcorn Company, with which he had a contract.

At trial the county presented evidence that David had sprayed a similar chemical

in his corn field at one point not fifty feet from the trees. The county also introduced evidence that some of the trees had died prior to the county's spraying. The county alleged that there was no evidence that the sprayer had leaked near Charles' corn crib. Several members of the sheriff's department testified that they visited the scene and found no evidence of any leaks or strange odors. Finally, the county introduced testimony that the amount of chemical 2–4–D found in the corn was far below the maximum FDA limits for safe human consumption, and that the popcorn could have been sold. The county also alleged the Raemakers were independent contractors.

The case was ultimately submitted to the jury. The jury subsequently returned with verdicts in favor of the defendants, awarding the plaintiffs nothing. The Welters have appealed.

Because the present case was tried as an action at law, our scope of review is limited to the correction of errors at law. *Brosamle v. Mapco Gas Products*, 427 N.W.2d 473, 474 (Iowa 1988); Iowa R.App.P. 14(f)(1).

The Welters first contend the trial court erred in instructing the jury on the concept of the independent contractor. The Welters argue the trial court failed to instruct the jury that the County and Raemakers had to prove the Raemakers were independent contractors, and also the trial court's instructions appeared to assume the affirmative defense had already been proven. We disagree.

In Instruction No. 1, the trial court informed the jury that Humboldt County claimed Bruce Raemaker was an independent contractor, and not an employee. In Instruction No. 12, the trial court instructed that Humboldt County was liable to the Welters for damages if the following were proven by the Welters: (1) the Welters suffered damages as a result of Raemaker's negligent spraying; (2) Raemaker was an employee of the County; and (3) Raemaker acted within the scope of his employment. Instruction No. 14 provided similar guidelines as to Charles Welter's claims.

Instruction No. 15, in part, stated an employer is liable for the wrongful acts of an employee if the acts were done within the scope of employment. Instruction No. 16 stated if Raemaker was an independent contractor, the Welters had to prove the following: (1) that Humboldt County had a nondelegable duty to safeguard against danger; (2) a County's negligence was a proximate cause of the Welters' damages; and (3) the amount of damage. Instruction No. 18 sets forth the major elements regarding whether a person is an independent contractor or an employee. Instruction No. 17 stated the County had a nondelegable duty to supervise the destruction of all noxious weeds.

■ The Welters argued at their motion for new trial that not one instruction was submitted requiring the County to prove Raemaker was an independent contractor. We believe, however, the instructions as a whole were sufficient, and correctly informed the jury of the proper legal principles to be applied. The Welters' cite to *Schlotter v. Leudt*, 255 Iowa 640, 123 N.W.2d 434 (1963), in support of their contention that an employer must prove that a hiree is an independent contractor and not an employee. *Schlotter*, however, reaffirmed the principle that "the burden of proof rests on the plaintiff in a common law action to prove by a preponderance of the evidence the claimed employer-employee relationship." 255 Iowa at 649, 123 N.W.2d at 440, *citing McDonald v. Dodge*, 231 Iowa 325, 329–30, 1 N.W.2d 280, 283 (1941). While the County certainly had a burden of setting forth facts to show that Raemaker was not an employee, the Welters had the ultimate burden of proving that Raemaker was an employee of the County.

■ The jury instructions, we believe, properly informed the jury that if Raemaker was found to be negligent in spraying the weeds, and if the jury found that he was an employee of the County acting within the scope of his employment, the County would be liable for damages. Contrary to the Welters' assertions, the jury instructions apprised the jury that the

County had a nondelegable duty to supervise the destruction of all noxious weeds, and that if Raemaker was negligent within the scope of that duty, the County would be liable. In contrast, the instructions also inform the jury that if the evidence shows Raemaker was not negligent in spraying the weeds, then the County would not be found negligent. We believe these instructions properly set forth the elements outlining the employer-employee versus hireor-independent contractor analysis enunciated more fully in *Schlotter* and numerous other cases. 255 Iowa at 643–44, 123 N.W.2d at 436–37. *See also Peterson v. Pittman,* 391 N.W.2d 235, 237 (Iowa 1986).

 "Instructions must be considered as a whole, and if some part should not have been given, the error is cured if the other instructions properly advise the jury as to the legal principles involved." *Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986). An instruction is not confusing if a full and fair reading of all the instructions leads to the inevitable conclusion that the jury could not have mistaken the issue. *Id.* Thus, if the jury has not been misled there is no reversible error. *Id.* Reading the instructions as a whole, and considering them with the issues presented, we find no reversible error.

David Welter next alleges the trial court erred in instructing the jury that damages could not be found if the trees in question were used as a windbreak. Welter points to Instruction 23, alleging this instruction was submitted despite the facts and circumstances surrounding the case. Welter argues the replacement of the trees is the correct measure of damages, rather than the diminution in value of the land, as the trial court ruled. Welter maintains that due to the small number of trees affected and their immaturity, no diminution of real estate occurred susceptible of being calculated.

 Because of the great versatility of trees, it is impossible to state an all-purpose measure of recovery for loss of trees. Iowa courts have through the years devised numerous alternatives to be applied according to the location of the trees and the use to which they were put. Petersen, *Arboreal Law in Iowa,* 44 Iowa L.Rev. 680, 688–92 (1959). Where trees are put to a special use, such as for windbreaks or shade, the measure is the difference in value of the realty before and after the destruction of the trees. *Walters v. Iowa Electric Co.,* 203 Iowa 471, 475, 212 N.W. 884, 886 (1927). Where the trees had no special use, the measure is the commercial market value of the trees at the time damages occurred. *Grell v. Lumsden,* 206 Iowa 166, 169, 220 N.W. 123, 125 (1928). Where trees can be replaced, the measure of damages is the cost of replacement. *Grell,* 206 Iowa at 169, 220 N.W. at 125; *see also Rector, Wardens, & Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan, Inc.,* 306 Minn. 143, 146, 235 N.W.2d 609, 611 (1975). *See also Bangert v. Osceola County, Iowa,* 456 N.W.2d 183, 191 (Iowa 1990) (recognizing that even if the before and after value of the land is the appropriate measure of damages, the court may consider the intrinsic value of trees to the owner).

In the present case, Welter argues the trees on the farm were not used exclusively as a windbreak. Thus, he argues the measure of damages arrived at in *Laube v. Estate of O'Thomas,* 376 N.W.2d 108 (Iowa 1985), is appropriate here. In *Laube,* the trees were concededly part of forest or timber, and had not been used as a windbreak. 376 N.W.2d at 108. The trial court fixed the award for damages on the basis of the trees current market value as lumber. *Id.* The Iowa Supreme Court did not disturb the award, but noted that pursuant to Iowa Code section 658.4, punitive or treble could be assessed, but not both. *Id.* at 109.

 We believe Instruction No. 23 correctly informed the jury of the correct measure of damages. Though Welter argues he testified that he planted some of the nontraditional windbreak trees in part to use as a windbreak, the trial court found, and we agree, Welter offered no evidence as to the value of the trees as a windbreak as it related to the diminution of the land prior to and after the alleged destruction.

Rather, Welter offered evidence of the replacement value of the trees, at approximately $3,200. Instruction No. 23 did provide Welter an avenue of recovery, specifically that if the jury found the damage to the trees deprived Welter of convenience, comfort or special enjoyment in the use of the trees, he could recover the cost of replacement. The record reveals Welter admitted some of the trees had died prior to the spraying, and that he had sprayed 2–4–D on his corn only fifty (50) feet away from the trees. Some of the tallest trees were nearest the ditch where the chemicals were sprayed. The remaining trees have apparently branched out normally. No pictures were ever introduced showing the damage. From these facts, we believe the trial court was correct in not instructing the jury on damages respecting windbreaks. The situation presented in *Bangert* is not present here. *See* 456 N.W.2d at 189–191.

 Charles Welter next argues the trial court erred in instructing the jury that a failure to minimize damages on his part precluded any recovery. Instruction No. 25 provided, in pertinent part:

> If you find that Charles Welter failed to use reasonable means to minimize his damages, he cannot recover for any damage caused by such failure. The burden of proving Plaintiff Charles Welter failed to minimize his damages is on the Defendants.

Welter contends the trial court should have provided that if he failed to mitigate damages, his damages should have been lessened by an amount caused by such failure.

The instruction submitted to the jury by the trial court closely follows the *Restatement (Second) of Torts* section 918(1)–(2) (1979), which states that "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." If harm results from his or her careless failure to make substantial efforts, the damages for the harm suffered are reduced to the value of the efforts he or she should have made. *Restatement*

*(Second) of Torts* section 918, Comment (b). *See also R.E.T. Corp. v. Frank Paxton Co., Inc.,* 329 N.W.2d 416, 422 (Iowa 1983).

■ We believe that instruction No. 25 was proper, given the facts of this case. We find there was substantial evidence to support the jury's verdict that there was no negligence on the part of Raemaker or the county.

AFFIRMED.