# In the Iowa Supreme Court

No. 23–2040

Submitted January 21, 2026—Filed March 6, 2026

**Green Belt Bank & Trust,**

Appellant,

vs.

**Stephanie Marie Van Mill, Mashon Michael Van Mill, Rapid Financial Service LLC** a/k/a **Small Business Financial Solutions LLC** d/b/a **Rapid Finance, Van Mill Farms LLC, In Rem Judgements,** and **Unverferth Manufacturing Company Inc.,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Butler County, DeDra L. Schroeder, judge.

Judgment creditor seeks further review of the court of appeals decision affirming the district court decision that Iowa Code section 642.21(1) applies to garnishment of moneys owed to an independent contractor. **Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded.**

May, J., delivered the opinion of the court, in which all justices joined.

Jonathan E. Kramer (argued) of Whitfield & Eddy, PLC, Des Moines, for appellant.

George A. Cady III (argued) of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellee Unverferth Manufacturing Company, Inc.

**May, Justice.**

Iowa Code section 642.21(1) (2022) limits the amount that can be garnished from an "employee's" expected earnings. In this case, we consider whether that statutory limit applies to moneys owed to an independent contractor as well. We conclude it does not. In this context, at least, "employee" means employee. It does not mean "independent contractor."

**I. Factual and Procedural Background.**

**A. This Action.** Green Belt Bank & Trust (Green Belt) brought this debt collection action against Mashon Van Mill and several other debtors. The district court entered judgment in favor of Green Belt for $2.6 million plus interest. Green Belt tried to collect through general execution but failed. Then Green Belt had the sheriff serve a notice of garnishment and interrogatories on Unverferth Manufacturing Company, Inc., a "supposed debtor" of Mashon. The notice warned Unverferth that "you shall not pay any non-exempt funds due . . . to the Judgment Debtor," who was identified as Mashon.

Unverferth answered twice. In its initial answer, Unverferth admitted that it compensated Mashon for "personal service" and that "$100,000" was the amount of compensation Unverferth "reasonably anticipated to be paid" to Mashon "annually." Then, a few days later, Unverferth submitted its amended answer. This time, Unverferth denied that it compensated Mashon for personal services. The amended answer also noted that it had been "corrected, per counsel conversation." It appears the reason for this change was that Mashon was "not an employee." Rather, "any work he does for Unverferth is as an independent contractor."

In response, Green Belt filed a "pleading controverting answers of garnishee Unverferth Mgf. Co. made herein." Green Belt alleged that Unverferth

"has some employment/independent contractor relationship with Defendant Mashon and pays Defendant Mashon perhaps $100,000.00 annually." Green Belt asked the court to enter judgment against Unverferth. Unverferth answered and asked the court to dismiss Green Belt's pleading.

**B. The Hearing.** The dispute proceeded to a hearing. Evidence was taken, and briefs were filed.

The parties agreed on some matters. For instance, they stipulated that the relevant garnishment period ran from August 1, 2022, to November 9, 2022. They also stipulated that during the garnishment period, Unverferth paid invoices from "Hill Top Industries" totaling $121,299.79.

There was a dispute, however, about whether Unverferth had any duty to withhold moneys owed to "Hill Top Industries," which had previously been referred to as "Van Mill Farms." After all, neither of those names appeared on the garnishment notice. Rather, only Mashon was named.

But there was also a question about whether Hill Top Industries was actually distinct from Mashon. Green Belt took the position that Hill Top Industries was really just a tradename for Mashon. It was not a separate entity that had any existence apart from him. And, therefore, Unverferth should not have paid the $121,299.79 to Hill Top Industries. Rather, it should have withheld those funds for Green Belt's benefit. And now Unverferth is liable to Green Belt in that amount.

Unverferth disagreed. Unverferth emphasized that although Mashon had an "independent contractor relationship with Unverferth," Unverferth had only "been invoiced" for Mashon's services by Hill Top Industries. And, according to Unverferth, Hill Top Industries was "a business and/or trade name" that was

separate from Mashon. Therefore, Unverferth said, it had no duty to withhold moneys payable to Hill Top Industries. Nor could it be liable to Green Belt now.

Unverferth also raised the alternative argument that even if it had some liability to Green Belt, the garnishment limitation of Iowa Code section 642.21(1)(*e*) would still apply. Therefore, Green Belt could be entitled to no more than ten percent of the amounts that Unverferth had paid during the garnishment period. *See* Iowa Code § 642.21(1)(*e*). This would mean that Green Belt could only be entitled to $12,129.98, not the full $121,299.79 that Green Belt sought.

Green Belt disagreed for three reasons. First, Green Belt argued that the section 642.21(1) limitation could only be raised by the judgment debtor (Mashon), not the garnishee (Unverferth). And Mashon had not raised it.

Second, Green Belt noted that the section 642.21(1) limitation only applies to amounts owed for the judgment debtor's "personal services." Iowa Code § 642.21(3)(*a*). And here, Green Belt argued, there was not a sufficient record of what was paid for "personal services" as opposed to goods and the like. There was also an insufficient record as to what portion of any services "were performed by Mashon . . . personally as opposed to by someone else at his direction."

Third, Green Belt argued that section 642.21(1) applies only to garnishment of an *employee's* earnings. And it was undisputed that Mashon was not an employee of Unverferth. Rather, it was undisputed that Mashon was an independent contractor.

**C. The District Court Order.** The district court agreed with Unverferth on some issues and with Green Belt on others. For starters, the court agreed with Green Belt that Hill Top Industries (formerly known as Van Mill Farms) was not a separate entity apart from Mashon. Rather, the court believed that those were

just names that Mashon had put on his invoices to Unverferth. And so, the court concluded, "the monies paid by Unverferth to Mashon Van Mill/Hilltop [Industries]/Van Mill Farms was subject to garnishment."

On the other hand, the court agreed with Unverferth that the section 642.21(1) limitation applied. Therefore, Green Belt was entitled to only $12,129.98, that is, ten percent of the $121,299.79 that Unverferth paid during the garnishment period. Green Belt filed a motion to reconsider, but the court declined.

**D. This Appeal.** Green Belt then filed this appeal, in which it asks for an order reversing the district court's determination that the section 642.21(1) limitation applies.

Notably, Unverferth did not appeal or cross-appeal from the district court's determination that its payments to Hill Top Industries were subject to garnishment and, therefore, that Green Belt is entitled to a money judgment against Unverferth. Therefore, in the appeal before us, there is no question about whether the district court was correct to enter a money judgment for Green Belt *in some amount*. Rather, the only question is about the proper amount for the judgment.

**E. The Parties' Briefs.** This is shown by the parties' briefs. Green Belt's brief raises three grounds for reversal. First, Green Belt argues that Unverferth did not have standing to assert the section 642.21(1) limitation, which Green Belt describes as "a personal exemption of Mashon Van Mill." Second, Green Belt argues that the section 642.21(1) limitation only applies to amounts owed to employees, not to amounts owed to independent contractors like Mashon. Finally, Green Belt argues that the section 642.21(1) limitation can't apply because the record doesn't show that Unverferth's payments were for

Mashon's personal services. Green Belt concludes by asking us to "reverse the district court's finding that [section 642.21(1)] applies to limit the judgment in favor of [Green Belt] from \$121,299.79 to \$12,129.98, and remand for entry of the larger judgment amount of \$121,299.79."

Unverferth's brief rejects each of Green Belt's arguments concerning section 642.21(1). In Unverferth's view, the district court "correctly applied" the section 642.21(1) limitation here. Unverferth concludes by asking us to "affirm the district court's" order, through which the court entered judgment against Unverferth for \$12,129.98.

**F. The Court of Appeals Proceedings.** We transferred the case to the court of appeals. The court rejected all of Green Belt's arguments and affirmed the district court. Green Belt then requested further review, which we granted.

**II. Scope and Standard of Review.**

"When our court grants further review, we have discretion to address any of the issues that were properly raised in the appeal." *State v. Kepner*, 27 N.W.3d 545, 553 (Iowa 2025). Here we address two issues raised by Green Belt: (1) whether Unverferth has standing to raise the garnishment limits imposed by section 642.21(1), and (2) whether those limits apply to moneys owed to an independent contractor. We review these statutory interpretation issues for correction of errors at law. *Teig v. Hart*, 28 N.W.3d 272, 277 (Iowa 2025).

**III. Analysis.**

**A. The Relevant Statutory Language.** Because this case turns on the meaning of a statute, we must focus on the statute's text, the words that were "enacted into law." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). In this case, we focus on section 642.21(1), which states in relevant part:

> The disposable earnings of an individual are exempt from garnishment to the extent provided by the federal Consumer Credit

Protection Act, Tit. III, 15 U.S.C. §1671 – 1677 (1982). The maximum amount of an employee's earnings which may be garnished during any one calendar year is two hundred fifty dollars for each judgment creditor, except . . . when those earnings are reasonably expected to be in excess of twelve thousand dollars for that calendar year . . . . When the employee's earnings are reasonably expected to be more than twelve thousand dollars, the maximum amount of those earnings which may be garnished during a calendar year for each creditor is as follows:

> *a.* Employees with expected earnings of twelve thousand dollars or more, but less than sixteen thousand dollars, not more than four hundred dollars may be garnished.

> *b.* Employees with expected earnings of sixteen thousand dollars or more, but less than twenty-four thousand dollars, not more than eight hundred dollars may be garnished.

> *c.* Employees with expected earnings of twenty-four thousand dollars or more, but less than thirty-five thousand dollars, not more than one thousand five hundred dollars may be garnished.

> *d.* Employees with expected earnings of thirty-five thousand dollars or more, but less than fifty thousand dollars, not more than two thousand dollars may be garnished.

> *e.* Employees with expected earnings of fifty thousand dollars or more, not more than ten percent of an employee's expected earnings.

As this excerpt shows, the first sentence of section 642.21(1) incorporates the *federal* garnishment limits imposed by the federal Consumer Credit Protection Act. Those federal limits, however, are not at issue in this case. When we refer to "section 642.21(1)" in this opinion, we refer only to the *state* law limitation imposed by the section's second and subsequent sentences—not to the federal limits incorporated by the first sentence.

**B. Who Can Raise Section 642.21(1)'s Limitation?** With the relevant statutory text in mind, we turn to the specific questions before us. We begin with Green Belt's theory that Unverferth lacked standing to raise section 642.21(1)'s garnishment limits in response to Green Belt's garnishment efforts. According to

Green Belt, those limits only apply if the judgment debtor—Mashon—asserts them.

Both the district court and the court of appeals rejected this argument. We conclude that they were right. The text of section 642.21(1) does not place any limit on *who* may raise its provisions in court. Rather, according to its text, section 642.21(1) simply limits the creditor's right of garnishment by establishing a "maximum amount . . . which may be garnished." This suggests that the statute's limit may be raised by anyone—including a garnishee—who must defend against the creditor's garnishment right. *Cf. L.F. Noll, Inc. v. Premiere Bus. Sols., LLC*, 988 N.W.2d 430, 438 (Iowa Ct. App. 2022) (noting that a garnishee's liability to a garnishor is "subject to state and federal statutory constraints on wage garnishment"). Here, Green Belt's garnishment right is the whole basis for its claim against Unverferth. So it makes sense that Unverferth would raise any limits on Green Belt's garnishment right, including those imposed by section 642.21(1).

**C. Does Section 642.21(1)'s Limitation Apply to Amounts Owed to Non-Employee Independent Contractors?** We now turn to the central question: Does section 642.21(1) only limit garnishments of employees' earnings? Or does it also limit garnishment of moneys owed to non-employee independent contractors? In a published decision, our court of appeals has previously concluded that the limit applies equally to employees and independent contractors. *Marian Health Ctr. v. Cooks*, 451 N.W.2d 846, 848 (Iowa Ct. App. 1989). And in this case, the district court and court of appeals both followed that precedent to conclude that the limit applies here even though Mashon was an independent contractor, not an employee.

Our court has not previously addressed the issue. So we treat it as a question of first impression, although we give respectful consideration to the views of our colleagues on the district court and court of appeals.

As explained, our interpretation of section 642.21 is governed by the statutory text, the words "enacted into law" by the people's elected lawmakers. *Doe*, 943 N.W.2d at 610; *see King v. Burwell*, 576 U.S. 473, 498 (2015) ("In a democracy, the power to make the law rests with those chosen by the people."); *Randolph v. Aidan, LLC*, 6 N.W.3d 304, 308 (Iowa 2024) ("The first principle [of statutory interpretation] is that courts don't write statutes. Rather, the legislature writes statutes.").

Usually, we give statutory words "their common, ordinary meaning in the context within which they are used." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016) (quoting *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014)). But when the legislature defines its words, we apply those definitions. *See Tweenten v. Tweenten*, 999 N.W.2d 270, 280 (Iowa 2023). And when a statute uses technical terms, we apply their technical meaning. Iowa Code § 4.1(38). And when a statute includes words that have acquired special meaning in the law, we apply their legal meaning. *Id.*; *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 682 (Iowa 2022).

Applying these principles to section 642.21(1), we think "employee" means employee. It does not mean "independent contractor."

"Employee" and "independent contractor" have special meanings in Iowa law. If a person providing service is vested with "the right to control, the right to determine, the mode and manner of accomplishing a particular result," then that person "is an independent contractor." *Schlotter v. Leudt*, 123 N.W.2d 434, 436–37 (Iowa 1963). Conversely, if those rights of control are vested in the

employer, then the service provider "is an employee." *Id.* Thus, "employee" and "independent contractor" define mutually exclusive categories of service providers. It follows that if, as here, the legislature has expressly included "employees" but has not mentioned "independent contractors," then independent contractors are excluded.

We note too that although Iowa Code section 642.21 includes special definitions for some terms, like "earnings," *id.* § 642.21(3)(*a*), the legislature provided no special definition for the term "employee." This is important. *See Randolph*, 6 N.W.3d at 308 ("When the legislature provides definitions for its words, we are bound by those definitions."). The legislature is very familiar with the term "employee" as well as the term "independent contractor." Both terms are used throughout the Iowa Code, sometimes together in the same Code section. *See, e.g.*, Iowa Code § 12D.8(1)(*b*); *id.* § 12I.7(1)(*b*); *id.* § 28J.9(19); *id.* § 68B.2(14), (25); *id.* § 85.61(11)(*a*)(3), (*c*)(2), (*c*)(3)(b); *id.* §§ 87.1(2), .23; *id.* § 91A.2(3)(*c*), (4); *id.* § 91D.1(4); *id.* § 91E.1(2)–(3); *id.* § 93.2; *id.* § 96.1A(15); *id.* § 97B.1A(26)(*a*)(2)(k); *id.* § 325B.1(2); *id.* §§ 327F.36, .39(1)(*d*); *id.* § 421.4; *id.* §§ 455K.2(2), .4(2)(*a*)(4); *id.* § 486A.202(3)(*c*)(2); *id.* § 488.903(1)(*e*); *id.* § 504.1501(2)(*e*); *id.* § 507A.4(10)(*a*), (*f*); *id.* § 507F.4(1)(*b*)(1)(a); *id.* § 508E.15(7)(*b*)(1); *id.* § 515E.2(2)(*a*)(2); *id.* §§ 535D.4(2), .16(3); *id.* § 543E.11(1)(*b*)–(*c*); *id.* §§ 671A.1–.2; *id.* § 715A.10(4)(*b*). And on some occasions, the legislature has used its power as the statutory lexicographer to specially define "employee" so that it will include independent contractors for some special purpose. For instance, in section 554.3405(1)(*a*), the legislature defined "employee" to "include[] an independent contractor" for purposes of that section. *See also* Iowa Code § 513B.2(10) (defining "eligible employee" to include some "independent contractor[s]" for purposes of chapter 513B, subchapter I);

Iowa Ct. R. 22.27(1) (defining "employee" to include "independent contractors" for purposes of "rules 22.22 to 22.26"). As mentioned, though, in section 642.21, the legislature chose not to specially define "employee." *See* Iowa Code § 642.21(3) (defining terms for Iowa Code section 642.21). This reinforces our view that in section 642.21(1), "employee" bears its ordinary meaning in our law, which excludes independent contractors. *See id.* § 4.1(38) ("Words and phrases" that have "acquired a peculiar and appropriate meaning in law[] shall be construed according to such meaning."); *State v. Leedom*, 938 N.W.2d 177, 188 (Iowa 2020) (consulting Black's Law Dictionary to define the term "exculpatory" as used in section 622.10 because "[t]he legislature did not define" that term).

We recognize that in a few statutes, our legislature has gone out of its way to define "employee" to explicitly exclude independent contractors. *See, e.g.*, Iowa Code § 68B.2(14) (" *'Local employee'* means a person employed by a political subdivision of this state and does not include an independent contractor."). We suspect that those are "belt-and-suspenders" measures whose aim is to avoid any conceivable doubt as to whether independent contractors might be included. *See Randolph*, 6 N.W.3d at 311 (addressing the "belt-and-suspenders" canon). Regardless, we don't think that those instances change the outcome here. They do not alter our approach to situations like this one, in which the legislature *has not* specially defined the term "employee." Rather, because the legislature did not define "employee" in section 642.21, we apply its traditional legal meaning, which excludes independent contractors. *See Meredith Pub. Co. v. Iowa Emp. Sec. Comm'n*, 6 N.W.2d 6, 14 (Iowa 1942) (reasoning that because the legislature had provided no special definition for "employee" in the statute at issue, the ordinary meaning "as uniformly declared by this court and other courts" should apply and, therefore, independent contractors should not be included); *see also Cmty.*

*for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989) (reasoning that because Congress did not define "employee" in the Copyright Act of 1976, the term's "accumulated settled meaning under . . . the common law" would apply (omission in original) (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981))); *Taylor v. Horning*, 38 N.W.2d 105, 107 (Iowa 1949) (noting that because the workers' compensation act "does not define 'independent contractor,' " the common law meaning applies).

We recognize that courts in other jurisdictions have "come to diametrically opposed conclusions" about whether federal or state garnishment limitations apply to independent contractors. *In re Jones*, 318 B.R. 841, 848–49 (Bankr. S.D. Ohio 2005) (collecting cases). Respectfully, those decisions do not cause us to depart from the analysis just described, through which we have striven to faithfully apply the text of the Iowa Code and our established rules of interpretation.

We have also respectfully considered the court of appeals' 1989 opinion in *Marian Health Center v. Cooks*, 451 N.W.2d at 846. In *Cooks*, the question was whether section 642.21(1)'s limitation applied to sums payable to a person who shined shoes as an independent contractor. *Id.* The district court said the limitation did not apply, but the court of appeals disagreed. *Id.*

Importantly, in *Cooks*, the court of appeals did not address the legislature's repeated use of the term "employee" in section 642.21(1). Instead, the court homed in on the statute's definition of "earnings," which was (and is) "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." Iowa Code § 642.21(3)(*a*) (1987). Based on this definition, the *Cooks* court believed that "the legislature was more

concerned with separating types of income rather than distinguishing standard employees from independent contractors." 451 N.W.2d at 847–48. In particular, the court thought that the legislature was focused on "distinguish[ing] [personal services income] from income from certificates of deposit or other investments." *Id.* at 848.

The *Cooks* court also believed that the purpose of section 642.21 was to protect individual workers from garnishments that would force them into bankruptcy or prevent them from "put[ting] bread on the table." *Id.* These threats, the court observed, apply "as surely" to independent contractors as to employees. *Id.* And so, the court concluded, "The intent of the legislature could not have been to distinguish employees from independent contractors." *Id.*

For the reasons already explained, we respectfully disagree with the *Cooks* court's reasoning and conclusion. We hereby overrule *Cooks*.

As explained, the text of the statute plainly limits its effect to earnings of employees. *See* Iowa Code § 642.21(1) (2022). And the term "employee" generally excludes independent contractors. Respectfully, the *Cooks* court erred by overlooking this important aspect of the statutory text.

We also respectfully disagree with the *Cooks* court's emphasis on the statutory definition of "earnings." If it is relevant at all, that definition—which includes "periodic payments pursuant to a pension or retirement program"—brings to mind traditional *employment* relationships. *Id.* § 642.21(3)(*a*). In any event, the "earnings" definition does not change the fact that section 642.21(1)'s effect is expressly limited to "an *employee's* earnings."

Finally, and respectfully, we see no textual grounds for an interpretation based on the susceptibility of independent contractors to bankruptcy or indigency. If Iowa's legislature had wanted to protect the income of independent

contractors, it surely could have. For instance, the legislature could have specially defined "employee" to include independent contractors, just as it did in section 554.3405(1)(*a*). But the legislature chose not to. The judiciary may not substitute a different choice. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012) ("Judicial amendment flatly contradicts democratic self-governance.").

To be clear, though, we do not belittle the *Cooks* court's concerns for the well-being of independent contractors, some of whom are undoubtedly subject to economic hardships. But those public policy concerns should be directed to the people's elected policymakers in the legislature. For our part, "we sit on a court of law, not a court of public policy." *Wallace v. Wildensee*, 990 N.W.2d 637, 646 (Iowa 2023). And "we cannot refuse to follow Iowa statutes for the sake of public policy." *Id.*

**IV. Conclusion.**

Iowa Code section 642.21(1) imposes limits on the "amount of an employee's earnings which may be garnished during any one calendar year." Its limits apply only to "an employee's earnings," not to moneys payable to independent contractors. *Id.* The district court erred in applying those limits to the garnishment of moneys payable to an independent contractor. We reverse and remand for entry of judgment without application of those limits.

**Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed in Part, Reversed in Part, and Case Remanded.**